**Donald T. McCONNELL, Administrator of the Estate of Anna F. McConnell, deceased, Plaintiff,**

v.

**Elliott L. RICHARDSON, Secretary, Health, Education and Welfare, Defendant.**

**Civ. A. No. 70-578.**

United States District Court,
W. D. Pennsylvania.

Jan. 30, 1971.

Walter A. Criste, Cresson, Pa., for plaintiff.

Richard L. Thornburgh, U. S. Atty., Pittsburgh, Pa., for defendant.

## OPINION

GOURLEY, Senior District Judge:

This is an action filed pursuant to Section 205(g) of the Social Security Act, 42 U.S.C.A. § 405(g), wherein plaintiff seeks judicial review of the decision of the Secretary of Health, Education and Welfare denying the application filed by plaintiff's decedent, Mrs. Anna F. McConnell, on May 19, 1969 for a period of disability and disability insurance benefits under Sections 216(i) and 223 of the Social Security Act, 42 U.S.C.A. §§ 416(i) and 423.

Mrs. McConnell stated in her application that she became disabled in December of 1955, which was the last month in

which she met the earning requirements of the Act. Benefits were denied initially and upon reconsideration by the Bureau of Disability Insurance. A hearing was requested and conducted on December 10, 1969. Mrs. McConnell was unable to appear at the hearing due to her physical condition, and her husband appeared in her behalf. On January 12, 1970 the Hearing Examiner rendered his decision denying benefits on the ground that Mrs. McConnell's impairments, although presently disabling, were not of the requisite severity when she last met the earning requirements of the Act. This decision became the final decision of the Secretary when the Appeals Council denied a request for review on March 25, 1970.

Mrs. McConnell filed a timely Complaint in this Court. Defendant filed an Answer, a certified copy of the administrative transcript, and, thereafter, a Motion for Summary Judgment. The Court conducted a hearing on October 14, 1970. While disposition of the Motion was under advisement, defendant filed a Statement of the Fact of Death of the original plaintiff pursuant to Rule 25(a) (1) of the Federal Rules of Civil Procedure. Subsequently, the decedent's husband filed a Petition for Substitution as Administrator of her estate. The Petition was granted.

Pertaining to the scope of judicial review, § 205(g), *supra*, provides as follows:

> "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a hearing. The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive * * *."

Under this Section and Section 10(e) of the Administrative Procedure Act, 5 U. S.C.A. § 706, the Court is limited to "ascertaining whether on the record as a whole there is substantial evidence to support the Secretary's findings of fact."

Goldman v. Folsom, 246 F.2d 776, 778 (3d Cir. 1957). In this determination, the Federal District Court is not to decide questions of credibility, and if the record as a whole will support equivocal but reasonable determinations, the District Court may not make a re-determination in accordance with its own views of the case. Moon v. Celebrezze, 340 F. 2d 926, 930 (7th Cir. 1965); Lechelt v. Cohen, 428 F.2d 214 (7th Cir. 1970).

The term "disability", as applicable to claims for benefits under both §§ 216(i) and 223, *supra,* is defined in Subsection 223(d), which provides in pertinent part:

> "(d)  (1) The term 'disability' means—
>
> "(A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months;
>
> "* * *
>
> "(2) For purposes of paragraph (1) (A)—
>
> "(A) an individual * * * shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), 'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.
>
> "* * *

"(3) For purposes of this subsection, a 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

"* * *

"(5) An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require.

"* * *."

Mrs. McConnell was born on March 10, 1935. She completed the eleventh grade of school and, at the age of sixteen, went to work upon the death of her father. She was employed as a waitress in a restaurant for one and one-half years. Thereafter, she worked at a garment factory, first as a seamstress using a sewing machine and then as an inspector of finished garments. Her husband testified that she left her employment in the latter part of 1954 for a number of reasons. Their first child, who was born on August 21, 1954, was not being properly cared for. Mr. McConnell joined the armed services and had to leave for Europe. At the same time, Mrs. McConnell was not feeling well, experiencing difficulty with her legs and a urinary incontinence requiring her use of uncomfortable protective clothing during her work.

In December of 1955, Mrs. McConnell suddenly began to experience a blurring of vision in her left eye and the presence of black spots in her right eye. She was examined by Dr. Thomas McKenna, an opthalmologist, who found her vision to be 20/200 in the left eye and 20/20 in the right eye. He diagnosed her condition as acute retro-bulbar neuritis. Dr. McKenna was then suspect that the ailment might be indicative of the very early onset of multiple sclerosis. However, he found normal arm and knee reflexes and no other symptoms to confirm his suspicions.

Dr. McKenna had Mrs. McConnell hospitalized on December 12, 1955. The neuro-muscular system was found normal and urination was stated to be normal. After treatment with ACTH, she was discharged on December 20, 1955 with considerable improvement in her vision. The final diagnosis was retro-bulbar neuritis. She continued to see Dr. McKenna who, upon his last examination of her on January 7, 1956, found her vision in her left eye to have been restored to 20/20.

From the time of Mrs. McConnell's discharge from the hospital until the return of her husband from Europe in March of 1956, she resided with her sister. Mr. McConnell was unemployed for a period after his return and performed the household chores during this period. Thereafter, he employed other persons to perform the household work three or so days or evenings a week.

Mrs. McConnell experienced recurrences of blurred vision in her left eye in April and December of 1956 and again in May of 1957 when she again was hospitalized. She was then experiencing a numbness of her fingertips and right leg and hip. Her vision was 20/200 in her left eye and 20/25 in her right eye. She had a partially blind area in the field of vision of the left eye. She was discharged with improved vision. Final diagnosis was retro-bulbar neuritis and multiple sclerosis.

Only portions of Mrs. McConnell's subsequent medical history need be related here. She was hospitalized again from April 12 to April 23, 1959 with a recurrent attack of blurred vision occurring three days earlier. She advised at that time of a history of urinary incontinence which reportedly began with the birth of her second child in December of 1956. A diagnosis of multiple sclerosis was confirmed in 1960. In 1966, Mrs. McConnell was treated for a neurogenic bladder resulting in incontinence and weaknesses in her legs. Thereafter, her condition gradually regressed into the advance stages of multiple sclerosis

which resulted in her death during the pendency of this action.

In a letter to the Bureau of Disability Insurance dated July 18, 1969, Dr. Joseph Cassidy, a general practitioner who was the McConnell's family physician, stated that he had examined Mrs. McConnell on September 28, 1955, at which time she complained of weakness in her legs, was unable to walk and suffered a total urinary incontinence. He stated that his further examination in October of 1955 showed no improvement. In December of 1955, he stated, she became totally blind. On this basis, Dr. Cassidy was of the opinion that her disability commenced in December of 1955.

The burden was on the claimant to establish that she suffered from a disability within the meaning of the Act on or before the date when she last met the Act's earning requirements. An impairment which becomes disabling after the earning requirements are last met cannot be the basis for finding of disability. Taylor v. Ribicoff, 204 F.Supp. 144 (S.D.W.Va.1962).

Although recognizing that Mrs. McConnell became disabled at some time subsequent to December 31, 1955, when she last met the earning requirements of the Act, the Hearing Examiner found that the medical evidence failed to establish the existence of impairments of the requisite severity on or before that date. In so deciding, the Hearing Examiner relied upon the fact that the records of Mrs. McConnell's hospitalization in December of 1955 revealed no significant neurological, musculosketetal or urological impairments at that time. The impairment of vision which she then experienced responded to treatment and was observed by Dr. McKenna in January of 1956 to have improved substantially. It was concluded by the Hearing Examiner that the impairment of vision was not of the requisite twelve months duration nor of such severity to preclude substantial gainful activity.

■■ Implicit in the finding of the Hearing Examiner was his rejection of the conclusion of Dr. Cassidy that Mrs. McConnell was totally disabled in December of 1955. The Hearing Examiner was not bound by such a conclusion. Lunsford v. Celebrezze, 238 F.Supp. 683, 688 (D.S.Car.1964). It was necessary for the Hearing Examiner to resolve the conflict between the retrospective statements of Dr. Cassidy to the effect that Mrs. McConnell experienced certain impairments in the latter part of 1955 and the contemporaneous medical records which made no reference to the existence of those impairments at that time. Matters of credibility are within the sole province of the Hearing Examiner and may not be redetermined here.

■ With respect to § 223(d) (1) (A) of the Social Security Act, the Court of Appeals for the Third Judicial Circuit has recently said:

"While this Court has stated that this restrictive language imposes a 'very harsh' burden upon applicants for disability benefits, it is clear that we are bound by its wording. Gentile v. Finch, 423 F.2d 244, 248 (3d Cir. 1970)." Woods v. Finch (3rd Cir. 1970), 428 F.2d 469, 470.

The Court is constrained to follow the statutory limitations. The decision of the Hearing Examiner is supported by substantial evidence and must be affirmed. However, the Court does wish to state in passing that it has the highest admiration for the courageous manner in which Mrs. McConnell withstood her most unkind affliction.

### ORDER

Now, this 30th day of January 1971, it is ordered that defendant's Motion for Summary Judgment be and the same is hereby granted and it is further ordered that the decision of the Secretary of Health, Education and Welfare is hereby affirmed.