James O. AUSTIN

v.

Anthony A. CELEBREZZE, Secretary of Health, Education and Welfare.

Civ. A. No. 63–B–59.

United States District Court
S. D. Texas,
Brownsville Division.

June 5, 1964.

Polk Hornaday and Graham McCullough, Harlingen, Tex., for plaintiff.

Woodrow Seals, U. S. Atty., and William B. Butler and Robert C. Maley, Asst.

U. S. Attys., Houston, Tex., for defendant.

GARZA, District Judge.

Claimant, James O. Austin, brought this action under Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Secretary of Health, Education and Welfare, denying his claim for a period of disability and for disability insurance benefits.

Plaintiff applied for a period of disability on August 1, 1960, and for disability insurance benefits on December 20, 1960. The administrative procedure was followed through a reconsideration, a hearing, and a review by the Appeals Council, all denying Plaintiff's claims. The Appeals Council rendered its decision on August 12, 1963, which became the final decision of the Secretary, and this action was instituted.

The Court has before it motions for summary judgment by both parties.

The function of the Trial Court is to review the record as a whole and determine if there is substantial evidence to support the Secretary's findings.

Section 405(g), Title 42 U.S.C., provides that "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive * * *." The decisions in this Circuit are clear that the Court is not to reject the evidence that would support the findings of the examiner and adopt the evidence favorable to the claimant. Celebrezze v. Kelly, 5th Cir., 331 F.2d 981, 1964.

The evidence adduced before the Examiner and additional evidence received by the Appeals Council, shows that the Plaintiff had three years of college, majoring in English. He worked for the Kansas State Police as an investigator about a year, and solicited advertising for approximately six years when, in 1942, he obtained employment as a railroad fireman which was his occupation until 1948.

In the spring of 1948, he was forced to quit working for the railroad because of his health, but the only medical findings at that time were rheumatism in the neck and shoulder region and slight arthritic changes in the cervical spine. Plaintiff was granted sick leave by the railroad, but was unable to return to his former employment, and his seniority and employment rights were finally terminated. He did not have the 120 months of railroad service necessary to qualify for any annuity from the Railroad Retirement Board.

From 1950 until 1960, the Plaintiff engaged intermittently in advertising solicitation, the longest sustained period being three or four months, but these efforts usually ended in Plaintiff's hospitalization and recuperation at his home.

From 1953 through 1958, he owned a small 8-acre farm, two acres being planted in citrus fruit and six acres planted in cotton and vegetables. Plaintiff managed the farm activities, but did none of the physical labor. According to his testimony, his income during the period from 1950 to 1960 was insignificant in that the farming venture resulted in a loss of over $2,000.00, and the advertising solicitation earned, at the most, around $800.00 in 1953. The Plaintiff was last insured for disability benefits on June 30, 1953, and he has the burden of proving that he was disabled under Section 416(i) (1), Title 42 U.S.C., which defines "disability" as:

"(A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration, or (B) blindness; * *."

The medical evidence in the record has been summarized both by the Hearing Examiner and the Appeals Council.

This is a novel case in that Plaintiff's physical difficulties stem, primarily, from a disease about which very little was known until the last four years. Although there is a lack of medical evidence showing any serious physical disorders up until 1955, all of the evidence is consistent with the now confirmed diagnoses of Drs. Manning and Hecht that the Plaintiff has been suffering for many years from a progressively worsening cerebral arteriovascular disease manifested by chronic and acute episodes of cerebrovascular insufficiency. These attacks include blackouts, headaches and convulsions.

In 1961 Plaintiff was hospitalized at the University of Kansas Medical Center which has been a leader in this field of medical research. The record contains a report from the Center, by Dr. Manning, stating:

"Multiple studies were done to attempt to determine etiology of Mr. Austin's disease and probably the most significant of these was the bilateral brachial angiography performed on July 28, 1961. No filling of the right internal carotid artery was found at this time and the left vertebral artery appeared to be narrowed considerably. It was our feeling that he had severe cerebral vascular insufficiency due to atherosclerosis with generalized arteriosclerosis and cervical osteoarthritis.

"It is obvious that the inception of these diseases is insidious and I am unable to give an exact date of onset. It seems likely to me, however, that the 1955 convulsion was on the basis of cerebral vascular insufficiency and that the disease antadated this period a number of years."

Dr. Hecht's report of December 4, 1961, notes that this condition has been "symptomatic since April 1948", and that Plaintiff has been unable to work since that date.

The Hearing Examiner found that the medical evidence before him supported the conclusions "that the newly discovered bilateral occlusive carotid and vertebral arterial condition is progressive and had its onset prior to 1955 and during the

time that the special earnings requirements of the Social Security Act, as amended, were met (June 30, 1953), and so finds." The Court is in complete agreement with this finding.

The Appeals Council found that a cerebral vascular insufficiency did *not* exist as of any date on or prior to June 30, 1953, and apparently bases this reversal of the Examiner upon the fact that the first convulsion suffered by the Plaintiff was in August, 1955, as well as the fact that Plaintiff apparently did not seek medical treatment between 1950 and 1955.

This Court feels, however, that all of the evidence, including the symptoms described by Plaintiff and his doctors as far back as 1945, is consistent with a slowly developing cerebral vascular disease.

This Court holds that there is not substantial evidence in the record to support a finding by the Appeals Council that a cerebral vascular insufficiency did not exist on or prior to June 30, 1953. All of the evidence, medical and otherwise, points to the fact that it did exist prior to such date.

 The only question remaining, therefore, is the severity of the disease, which certainly comes within the statutory definition of a "physical impairment which can be expected to result in death or to be of long-continued and indefinite duration." Both the Examiner and the Appeals Council found that on the date in question Plaintiff was not disabled under the Act and could have engaged in various types of light work at home or at an office. The Appeals Council did, however, disagree with the Examiner that the claimant was capable of professional writing. The clerical jobs envisioned by the Appeals Council, such as account checker, tax record clerk, voucher clerk and insurance clerk, are not any more physically demanding than the solicitation activities engaged in by the Plaintiff before and after the crucial date. They do require one element, however, that Plaintiff was unable to furnish

at any time since 1948, and that is a reasonable degree of regularity and continuous activity.

 This Court is of the opinion that the unsuccessful sporadic attempts by the Plaintiff to engage in a remunerative occupation did not constitute the "substantial gainful activity" contemplated by the Act. It is not necessary to find that Plaintiff was *totally* disabled. Slight work of an irregular spasmodic character, subject to frequent interruptions because of Plaintiff's ailment is not substantial gainful activity. Corn v. Flemming, S.D.Fla., 1960, 184 F.Supp. 490; Campbell v. Flemming, D.C.Ky., 1961, 192 F.Supp. 62.

Fifth Circuit Judge Rives, sitting by designation in the District Court in Alabama, stated in Aaron v. Fleming, D.C. M.D., Ala., 1958, 168 F.Supp. 291, at page 295:

"I do not interpret the Act to apply only to the totally helpless and bed-ridden nor to those at death's door."

All agree that Plaintiff is disabled now under any interpretation of the definition, and the Hearing Examiner found that during the period in question "the Claimant's work activity did not constitute engaging in substantial gainful activity." The attempts to solicit advertising invariably caused hospitalization and long periods of inactivity, and all of the farm labor done on Plaintiff's 8-acre tract had to be done by others. The decisions of management required of Plaintiff during the period he owned this farm could hardly be called substantial gainful activity.

The decision of the Hearing Examiner and the Appeals Council that Plaintiff could have engaged in sufficient work to justify denying his claim for a period of disability or disability insurance benefits, apparently is based more on a lack of evidence during the period in question than anything in the record. The Court feels, however, that the lack of clinical findings during the early years of Plain-

tiff's difficulties is fully explained by the newly discovered medical theories.

■ It seems apparent that Plaintiff did not seek medical treatment more often between 1948 and 1955 because he thought he was only suffering from some rheumatism and arthritis which would improve. He could not, of course, return to his former occupation as a railroad fireman, but inability to carry on one's former work is not enough, in itself, to satisfy the statute. Witherspoon v. Celebrezze, 5th Cir., 1964, 328 F.2d 311; Celebrezze v. O'Brient, 5th Cir., 1963, 323 F.2d 989. The Plaintiff's education, training, experience, and physical and mental capacities must also be considered. Aaron v. Flemming, supra.

The Plaintiff turned to the light work which he knew best, that of soliciting advertising, but he was unable to carry on this activity with any degree of regularity.

■ The inferences made by the Examiner and the Appeals Council must also be supported by substantial evidence. Celebrezze v. O'Brient, supra. Those inferences made from the fact that the doctors, before the true nature of Plaintiff's condition was discovered, only restricted him from physical labor or from driving alone or from other activities where he might hurt himself or others, are not based on substantial evidence. The lack of earlier medical findings of Plaintiff's disability was caused by a lack of medical knowledge about the diseases from which he suffered.

■ This Court, therefore, does not find substantial evidence to support the findings of the Appeals Council; and the final decision of the Secretary, denying Plaintiff's claims for a period of disability and disability insurance benefits must be overruled. Plaintiff's motion for summary judgment is granted, and Defendant's motion for summary judgment is denied.

Clerk will send copies of this Memorandum Opinion to counsel with instructions to submit appropriate decree for entry.