Julius H. NORWOOD

v.

Robert FINCH, Secretary, Health, Education & Welfare.

Civ. A. No. 5078.

United States District Court,
E. D. Texas,
Tyler Division.

Sept. 23, 1970.

J. T. Maroney, Jr., Lufkin, Tex., for plaintiff.

Roby Hadden, U. S. Atty., Tyler, Tex., for defendant.

MEMORANDUM OPINION

JUSTICE, District Judge.

This day came on to be considered the defendant's motion to set aside the court's order denying the parties' respective motions for summary judgment and remanding this cause to the Secretary for the taking of further evidence, and having reconsidered the record, the court withdraws its previous order and, instead, remands the cause on the basis of the following findings and conclusions.

Like Judge Brown,

"At this point, we see no need for a lengthy discussion of the standards applicable when courts deal with administrative determinations. * * * The question of what amounts to substantial evidence is a matter of law for the reviewing court to determine upon a considered evaluation of the whole record. Efforts to verbalize the proc-

ess are seldom helpful since the standard is question-begging, with all quite clear once the conclusion is reached." Hayes v. Celebrezze, 311 F.2d 648 at 651 (5th Cir. 1963).

Since there is no question that Julius H. Norwood has certain medically determinable impairments, the only issue in this case is whether these impairments result in a disability sufficiently severe to render the claimant incapable of engaging "in any substantial gainful activity". 42 U.S.C.A. 416(i) (1) and 423(d) (1) (A). The meaning of this phrase is ably set out in Ellerman v. Flemming, 188 F.Supp. 521, at 526–527 (W.D.Mo.1960).

> "However, it must be kept in mind that the word 'substantial' as used in Sections 416 and 423, supra, does not modify 'gainful,' but rather modifies 'activity'. The activity in which a claimant must be able to engage must not only be 'gainful' but it must also be 'substantial'. The determinative factor, therefore, is not how substantial the gain, but how substantial the activity, in which the claimant can be gainfully engaged * * * 'Substantial', as used in the Act, supra, is synonymous in the sense of belonging to the real nature of 'activity' which a person can perform. It connotes 'activity' as being real or actual, as opposed to transitory or apparent. It contains the idea of an 'activity' which may be performed with some degree of regularity—not occasionally, sporadically or infrequently. Therefore, I think 'substantial gainful activity' * * * is a term to be measured by a finding establishing an 'activity' from which something gainful, with some degree of regularity, should be inferred; that a finding in respect to a 'physical or mental impairment' which is based on evidence from which the only inference can be made or expected is that a person's 'activity' may be frequently or transitorily restricted, cannot be the premise for a finding of ability to 'engage in any substantial gainful activity.' "

This is the standard the court must apply in determining whether plaintiff is eligible for disability insurance benefits. In order to demonstrate why the administrative finding of no disability must be remanded for want of substantial evidence, it is necessary to review the medical data, medical opinions, and subjective complaints related to plaintiff's impairments.

The evidence contained in the record concerning plaintiff's physical condition begins with his medical discharge from military service in 1944 for chronic arthritis affecting multiple joints. The record also shows that plaintifff reported that he had been taking two to six aspirins a day for several years prior to 1967.

In October 1967, after two months of increasing complaints of head and neck pains and dizziness, plaintiff went to see Dr. George Tipton. Following several visits for treatment of his vertigo, plaintiff was referred by Dr. Tipton to the Dallas Veterans Administration Hospital in mid-December 1967. During over three weeks there, plaintiff apparently was examined by several doctors.

At the time the claimant was admitted, a Dr. Andre noted that his examination revealed "basilar artery syndrome". Later, a Dr. Miller wrote that plaintiff "most likely has disease in carotid or vertebral artery system." A Dr. Hughes diagnosed "cerebral artereosclerosis, basilar artery, manifested by vertigo." The most detailed—and readable—comments in the hospital records come from Dr. Ludlow M. Pence, Chief, Neurology Service, who said, in part,

> "The cervical spinal films, the skull films, and the sinus X-rays have been reviewed and it is noted that he does have a very dark line of calcification that is compatible with the basilar artery.
>
> *   *   *   *   *   *
>
> IMPRESSION: Basilar artery, arteriosclerosis with vascular insufficiency primarily to labryinthine system."

After his discharge from the Veterans Administration Hospital, plaintiff continued to be treated regularly by Dr. Tipton, until the doctor moved at the end of 1968. Dr. Tipton's general diagnoses were "basilar artery syndrone" and "osteoarthritis of cervical spine." Some relevant entries in his records refer to "straightening of c[ervical] spine" and "cervical disc" problem. Dr. V. W. Pryor, to whom plaintiff went after Dr. Tipton moved away, noted that

> "X-ray of the cervical spine shows, either due to arthritis or old injury, loss of curvation of cervical spine. There is considerable disc atrophy or injury in the cervical area. X-ray from the V. A. Hospital shows that he has some hardening of the left basilar artery, feeding of base left side of brain."

On October 29, 1968, plaintiff was evaluated by Dr. Kenneth S. Axelson. Based on an examination "of from 10 to 15 minutes", Dr. Axelson could find "no evidence of physical disease". Plaintiff testified: "I did not undress. I sat in a chair for the full length of time I was in his office * * *". In a subsequent letter, he asked, rhetorically,

> "If the examination concist of the Eyes—Ears—Nose Blood Pressure and a Stetohscope Examination of the Heart & Lungs without the visual aid of X-ray and/or Laboratory work up. And a patient can do all the things as findings in (Exhibit 17) in A time limit of from 10 to 15 minutes, If this constitutes A Neurological examination, and is in constancy with such examination, I would like to know [sic]?"

The fact that Dr. Axelson did not examine any X-rays of plaintiff is most significant; for, unlike Dr. Axelson, all the doctors who examined any X-rays of Mr. Norwood found "evidence of physical disease." Because of this omission, the court is unable to conclude that Dr. Axelson's evaluation constituted as much as a scintilla of evidence that plaintiff was not disabled.

Dr. Tipton's X-rays of plaintiff's cervical spine in October 1967 showed osteoarthritis. The Dallas Veterans Administration Hospital X-rays of his cervical spine, skull, and sinus area in December 1967 revealed calcifications of the basilar artery. Apparently, Dr. Pryor did not take any new X-rays, but studied previous ones and agreed with the judgments of Dr. Tipton and the Dallas Veterans Administration Hospital doctors.

In addition, a letter from Dr. R. J. Rose, Chief, Outpatient Service, at the Waco Veterans Administration Hospital, referred to X-rays of plaintiff's lumbar and cervical spine, knees, and elbows in August 1968. While Dr. Rose concurs in the diagnosis of hypertrophic arthritis, he does not agree that a basilar artery syndrome is necessarily indicated, though he apparently did not have skull or sinus area X-rays.

The Hearing Examiner found on the basis of more than substantial evidence that plaintiff was suffering from "a. Cerebral arteriosclerosis, basilar artery. b. Osteoarthritis of the cervical spine." However, despite these findings, the Examiner mistakenly concluded no disability on the basis of the second sentence of 20 C.F.R. 404.1501(c). That sentence of that section of the regulations merely provides that a claimant's bald assertion of his impairment is, alone, insufficient to establish it.

> "Neither in law or in logic is there ground for insisting that proof of disability shall rest solely upon clinical findings, and that the subjective reaction to undisputed determinations of physical impairments be crossed out of the equation merely because no machine has been invented to calibrate pain or to determine precisely its incapacitating effects upon different individuals." Mode v. Celebrezze, 359 F.2d 135 at 137 (4th Cir. 1966).

Since the Examiner determined that plaintiff suffered from medically determinable impairments, he erred in disregarding the claimant's subjective statement of symptoms.

Moreover, if the first sentence of Section 404.1501(c) is read to require the discounting of subjective complaints that are out of proportion to objective clinical and laboratory findings, then such a reading must be struck down in light of Judge Brown's excellent opinion in Page v. Celebrezze, 311 F.2d 757 at 762–763 (5th Cir. 1963).

"If pain is real to the patient and as such results in that person being physically unable to engage in any gainful occupations suited to his training and experience, and this results from 'any medically determinable physical or mental impairment' the disability entitles the person to the statutory benefits even though the cause of such pain cannot be demonstrated by 'objective clinical and laboratory findings.' We are dealing with such a case here. This is not the simple case of a person complaining of pain for which none of the doctors can find any basis, either organic or neurotic. Here we are dealing with a person about whom there is almost substantial agreement that she is disabled in fact by reason of psychosomatic or psychoneurotic involvements." Cf. Ber v. Celebrezze, 332 F.2d 293 at 296 (2nd Cir. 1964).

The validity of the position taken in *Page, Ber,* and *Mode,* supra, is not militated against by the 1967 amendment to the Social Security Act, defining impairment, 42 U.S.C.A. 423(d) (3); for

"A reading of the legislative history of the amendment clearly discloses that Congress intended * * * [only that] claims be disallowed unless supported by clinical and laboratory findings or other medically acceptable evidence." King v. Cohen, 304 F.Supp. 148 at 150 (M.D.N.C.1969).

And in any case, physical and mental impairments which are medically determinable are not limited to those discoverable through *objective* clinical and laboratory findings; clinical and laboratory diagnostic techniques are used also to evaluate *subjective* factors which can be medically determinative of physical and mental impairments. (See 20 C.F.R. 404.1506(b) where symptoms, signs, and laboratory findings are defined.) As one court has put it,

"In this day of scientific and medical achievements, there are numerous medical experts in the field who may examine and test a complaining person objectively and determine with reasonable accuracy the reality and genuineness of a person's subjective complaints, and as well, if any pain exists, its character and extent." Lightcap v. Celebrezze, 214 F.Supp. 209 at 215 (W.D.Pa.1962). Cf. Branham v. Gardner, 383 F.2d 614 at 626–634 (6th Cir. 1967).

Finally, it must be remembered that in this case, as well as in *Page, Ber,* and *Mode,* supra, plaintiff has admittedly been found, on the basis of the objective data, to have certain medically determinable impairments.

"These decisions require only that once a clinical symptom is shown to exist, its disabling effect must be considered in light of all the circumstances, including the particular claimant's subjective reactions and general background * * *" *Mode,* supra, 359 F.2d at 136.

In the instant case there is no real indication of mental impairment causing disability, but there is substantial corroborating evidence of severely debilitating subjective symptoms resulting from plaintiff's undisputed physical impairments. Other undisputed evidence in the record reveals that since mid-1967 plaintiff has experienced pain in his neck, shoulders, and arms and frequent dizziness. As time passed, the incidence of his vertigo, accompanied by nausea and vomiting, increased. These spells or attacks occur regularly upon the slightest activity, such as turning a

corner while walking or rolling over in bed while sleeping. When trying to get from one side of the room to another, plaintiff has lost his balance and sense of direction, knocking into furniture and falling down. As a result of these conditions, confirmed by his wife, plaintiff is virtually confined to his home, unable to do little more than watch television. Not only is there no suggestion in the record that plaintiff is a malingerer, but also the vocational expert, Dr. Donald G. Barker, concluded that plaintiff's career demonstrated his dependable character and dedication to duty.

It is interesting to note that the claims representative who interviewed plaintiff wrote

"I have talked to the W/E several times and although I don't understand his illness he appears to be ill everytime I see him. He holds his head awkward [sic] and rises slowly and moves slowly."

The comments of this observer, as well as all the other evidence in the record, are in conflict with Dr. Axelson's evaluation. In his consultative report, based on one brief visit by the claimant, Dr. Axelson found nothing but "postural vertigo * * * purely positional hypotension * * * severely aggrivated [sic] by a marked functional overlay on the patient's part." Thus, the court cannot believe that the Hearing Examiner relied on "the medical evidence as a whole" to make his decision; rather the record indicates a situation comparable to that in *Ellerman,* supra, 188 F.Supp. at 525.

"The transcript as a whole, read together with the Referee's opinion, reveals that he must have been substantially influenced in his decision, solely by the medical report of Dr. Cashman. Dr. Cashman's report, standing alone, does not constitute substantial evidence in support of the Referee's decision, *ipso facto,* in view of the other medical evidence and other facts reflected in the transcript."

This principle has been strongly reiterated recently in Tinsley v. Finch, 300 F.Supp. 247 at 252 (D.S.C.1969).

"Under the rule promulgated in Thomas v. Celebrezze, the hearing examiner may not consider one portion of the record only. This court, upon review, is obliged to consider the entire record in order that it be assured the findings of the hearing examiner are rational. The rationality of his finding must therefore be measured against the entire record, and not merely a portion of it."

Here the examiner's reliance on Dr. Axelson's report is not only misplaced, but also inconsistent. Given the examiner's own findings of physical disease, his conclusion of no disability is not based on substantial evidence.

Moreover, in the present case, as in Lunsford v. Celebrezze, 238 F.Supp. 683 (W.D.S.C.1964), plaintiff's personal physicians concluded that he was disabled and that no improvement was indicated.

"I have seen patient at approximately monthly intervals. Little change noted except some progression of disease with worsening of symptoms."

"He * * * is taking as good as [sic] medication as we know of for his condition. However, it is doubtful that the response will be satisfactory and he will not be able to return to work at any time."

When such evidence is in the record, it has been held that

"The expert opinions of physicians as to disability are not binding on the Examiner, but an expert opinion to that effect which is not seriously controverted by substantial evidence to the contrary supplies this court with a proper ground, inter alia, for reversal." *Lunsford,* supra, 238 F.Supp. at 628.

Having considered the relevant medical data, medical opinions, and subjective

complaints in order to determine the extent of plaintiff's impairments, it is now necessary to look at his background and work history in order to determine whether the impairments result in an inability to engage in any substantial gainful activity. When he left his job at Rusk State Hospital in 1968, plaintiff, at 50 years old and with a tenth grade education, had worked there most of his adult life. As a ward attendant and supervisor in maximum security unit of an institution for the criminally insane, plaintiff not only had duties involving both physical labor and administrative work, but also was subject to almost constant stress and tension of a peculiarly intense sort. The fact of his longevity and advancement to a position of responsibility in such a demanding job is strong evidence of his stability and responsibility. No challenge whatsoever to these characteristics is raised in the record before the court.

The government's motion to set aside the previous order of the court in this case is based on the 1967 amendment which provided that the existence of a claimant's disability is not affected by "whether he would be hired if he applied for work." 42 U.S.C.A. 423(d) (2) (A). But this recent addition to the Social Security Act merely emphasizes that

"The question in Social Security cases relates to whether a man can work, and not whether he can find a job * * * " Robinson v. Celebrezze, 326 F.2d 840 at 841 (5th Cir. 1964).

As a recent case has explained,

"Although it is not necessary that the Secretary prove that a specific job vacancy exists for plaintiff or that he would be hired if he applied for work, Sec. 223(d) (2) (A) of the Act, 42 U.S.C. Sec. 423(d) (2) (A), whether a reasonable opportunity exists is to be determined in the light of plaintiff's impairments, age, education, training, work experience, and the labor market." Boback v. Finch, 304 F.Supp. 966 at 969 (W.D.Pa.1969).

When one court was confronted with a case concerning a woman with vascular type headaches where, as here, the Secretary placed undue reliance on the part of the record contrary to the overwhelming weight of the rest of the record, it wrote that

"It is fanciful fiction to imagine an employer rehiring her to do close and tedious work such as sewing.—The realities of the world of commerce were not taken into account in the Secretary's decision. Plaintiff does not live in a 'make believe' industrial world where employers provide sheltered work shop conditions, instead of being in business to generate profit * * * [citing cases]. By the same token, the Secretary's decisions must not be made in the world of make believe." Terrell v. Celebrezze, 245 F. Supp. 874 at 875 (W.D.S.C.1965).

From the foregoing it is obvious that in a factual situation such as that in the instant case, a previously unenunciated but nonetheless essential ingredient in the disability determination must be whether any employer would *retain* a person with the claimant's admitted impairments and undisputed complaints, *regardless* of the appropriateness of his education, intelligence, skills, and experience for particular jobs. In addition, it seems unclear whether the vocational expert himself felt that Mr. Norwood was physically capable of engaging in occupations that were discussed.

In a case where the record showed the claimant to be much more active—painting his house, working in the yard and garden, hunting, fishing, and horseback riding—than in the instant situation, the court held that

"It appears, however, that the hearing examiner relied upon the plaintiff's relatively light and fragmentary activities in determining that many possible job opportunities were available to such persons. But intermittent or sporadic activities do not necessarily bar a claimant from establishing dis-

ability when he prefers not to remain idle during the period of his claimed disability. Rather, a claimant's ability to work must be regular and substantial, actual and practical, before he may be said to be able to engage in substantial gainful activity." Paul v. Ribicoff, 206 F.Supp. 606 at 612 (D.Colo.1962).

This holding is supported not only by a multitude of cases, Thompson v. Celebrezze, 238 F.Supp. 873 at 876 (N.D.Tex. 1965); Austin v. Celebrezze, 230 F.Supp. 256 at 259 (S.D.Tex.1964); Prestigiacomo v. Celebrezze, 234 F.Supp. 999 at 1003 (E.D.La.1964); Lunsford, supra, 238 F.Supp. at 688; Lightcap, supra, 214 F.Supp. at 213; Hilber v. Ribicoff, 196 F.Supp. 460 at 467 (D.Mont.1961), but also in the Secretary's statement to Congress, quoted in McGaha v. Ribicoff, 262 F.Supp. 161 at 163–164 (D.Del.1966).

As the Fifth Circuit said only a few weeks ago,

"the relevant inquiry is not whether the claimant is able to obtain employment at some substantial gainful activity that exists in the national economy, by whether the claimant is able to engage in such activity." Brown v. Finch, 429 F.2d 80 at 82, (5th Cir. 1970).

Given Mr. Norwood's frequent and severe attacks of vertigo, no

"fair-minded person * * * [could] reasonably come to the conclusion that * * * [claimant] did not meet the disability standard * * *" King v. Finch, 428 F.2d 709 at 713 (5th Cir. 1970).

There is no reason to believe that any employer would retain in his employment an employee with Mr. Norwood's symptoms. Hence, the court must conclude that the decision of the Secretary is not supported by substantial evidence and should be remanded. It is so ordered.