**Bertha M. SANBORN, Plaintiff,**

**v.**

**Caspar WEINBERGER, Secretary of the Department of Health, Education and Welfare, Defendant.**

**Civ. A. No. 4727.**

United States District Court,
D. Delaware.

Sept. 24, 1974.

Reargument Denied Oct. 11, 1974.

Elwyn Evans, Jr., Wilimington, Del., for plaintiff.

Ralph F. Keil, U. S. Atty., and John H. McDonald, Asst. U. S. Atty., Wilmington, Del., for defendant.

## OPINION AND ORDER

LATCHUM, Chief Judge.

■■ The claimant, Bertha M. Sanborn, has been denied a period of disability and disability insurance benefits[1] claimed under Sections 216(i) and 223 of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i) and 423, by a final decision of the Secretary of Health, Education and Welfare ("Secretary"). The claimant resides in Delaware[2] and has timely brought this suit[3] pursuant to 42 U.S.C. § 405(g) to

---

1. "Disability insurance benefits are payments made to an individual who is insured under the Social Security Act when he becomes disabled within the meaning of the Act. A period of disability is, however, simply the freezing of an insured individual's benefit status so that his retirement benefit rights are preserved, even though l.e does not do any more work in an employment covered by Social Security." Banks v. Celebrezze, 341 F.2d 801, 803 (C.A.6, 1965).

2. Docket Item 1, par. 1; Docket Item 5, par. 1. .

3. The complaint, Docket Item 1, was filed on September 14, 1973 which is within 60 days from July 18, 1973, the date of the Secretary's final decision (Docket Item 6, pp. 5–11), as required by 42 U.S.C. § 405(g).

secure judicial review of that final decision. The Secretary has moved for summary judgment and in the alternative has requested a hearing at which both sides can be heard to dispose of the matter.

The scope of judicial review available to the claimant in this court is defined by 42 U.S.C. § 405(g) which provides that the Court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." In exercising this power 42 U.S.C. § 405(g) requires that the "findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive. . . ."[4] A transcript of the record [hereinafter referred to as Tr.] has been submitted by the Secretary,[5] briefs have been filed and the parties have been afforded a hearing before this Court. The case is therefore ready for final determination.

The procedural background of this case is as follows: On August 9, 1971, the claimant applied for a period of disability and/or all disability insurance benefits payable to her under Title II of the Social Security Act. (Tr. 83). In that application the claimant alleged that she became unable to work because of a nervous disorder and ulcerated stomach on May 15, 1958 and that she was still disabled.

The application was initially rejected by both the Director of the Division of Initial Claims (Tr. 89) and the Director of the Division of Reconsideration. (Tr. 95–96). On January 3, 1973, an Administrative Law Judge, considering the case de novo, found that beginning on May 15, 1958, the claimant was under a "disability" as that term is defined in the Act, and that her disability

has continued up to and through the date of his decision. No evidence was recited by the Law Judge since his decision was favorable to the claimant. (Tr. 37).

The Appeals Council, on its own motion, reviewed the Law Judge's decision because it wished "to reevaluate your [the claimant's] subsequent work activities, especially in the years 1963, 1965 and 1966." (Tr. 35). Upon the reevaluation, the Council found:

"1. The claimant met the special earnings requirements of the Act on May 15, 1958, the alleged date of disability, and continued to meet such requirements through September 30, 1960, but not thereafter.

"2. The claimant's work activity in 1963 and thereafter, demonstrated her ability to engage in substantial gainful activity.

"3. The claimant was not under a 'disability,' as defined in the Social Security Act, as amended, commencing at any time on or prior to September 30, 1960." (Tr. 10).

In light of these findings, the Council reached the decision that the claimant was not entitled to a period of disability or to disability insurance benefits under the Act.

The claimant argues before this Court that the Council's decision, which now stands as the final decision of the Secretary, is based solely on the claimant's work activities after 1960. She contends that while such activities are relevant to determining the continuing nature of the initial disability, the Secretary's decision placed "undue reliance on their significance contrary to the overwhelming weight of the rest of the record."[6] The Secretary, in opposition to the plaintiff's position, contends that his final decision to deny the claimant's application was supported by substan-

4. "Substantial" means more than a scintilla but less than a preponderance. Hess v. Secretary of Health, Education and Welfare, 497 F.2d 837 (C.A.3, 1974) ; Young v. Weinberger, 366 F.Supp. 81, 83 (D.Md. 1973).

5. Docket Item 6.

6. Docket Item 11, p. 7.

tial evidence in the record and must therefore be affirmed.

■ The definition of a "disability" under the Act is an "inability to engage in any substantial gainful activity by reason. of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1). The test for ascertaining whether a disability exists, therefore, is a two step process: first, a determination must be made of the extent of the physical or mental impairment, and second, a determination must be made of the extent to which that impairment has resulted in an inability to engage in any substantial gainful activity. Rolph v. Weinberger, C.A. No. 4694 (D.Del. filed August 16, 1974); Harris v. Richardson, 450 F.2d 1099, 1011 (C.A. 4, 1971); Dupkunis v. Celebrezze, 323 F.2d 380, 381, n. 5 (C.A. 3, 1963); Hodgson v. Celebrezze, 312 F.2d 260, 263 (C.A. 3, 1963).

### Medical History

In carrying out the first step of the test for finding disability, the medical evidence before the Secretary showed that the claimant was born on July 4, 1925 (Tr. 83), had an unsuccessful first marriage from 1949 to 1952, married her present husband in 1953 (Tr. 85) and accepted custody and apparently adopted a child in 1954. (Tr. 57, 143).

The fact that the claimant had a mental problem was first pointed out to her by her family physician, Dr. Mencher, in 1958. (Tr. 58). In April 1958, while in the Delaware Hospital because of continued complaints of poor health, poor appetite and insomnia, a psychiatrist, Dr. Kay, was consulted (Tr. 66, 143) and he reported that she had a history of "not being right" since about age 16. (Tr. 131). He noted that she had suffered from an estrogen deficiency, nervousness, nightmares, crying spells, dizziness, depression, headaches, weakness and various somatic complaints. He found that she had a "clas-

sical tension depression syndrome but was neither psychotic nor seriously suicidal when examined" but "her neurotic depressive reaction made her virtually unemployable at that time because of fatigue, loss of interest in life, depression, and preoccupation with somatic complaints." (Tr. 132–133). There is evidence that the claimant had seen Dr. Kay once a month for several months thereafter (Tr. 67, 143) although a letter from Dr. Kay indicates he only saw her the one time on April 5, 1958. (Tr. 131, 132).

In September 1958, when her child entered school, the claimant's condition became worse, culminating in an unsuccessful suicide attempt on January 21, 1959. (Tr. 145). She was voluntarily admitted that day to the Division of Mental Health, Delaware State Hospital. (Tr. 141, 163). She was discharged against medical advice on March 25, 1959. (Tr. 163). A report of that discharge indicates that she was no longer depressed and was free from psychosis. (Tr. 147). Her diagnosis was "psychotic depressive reaction." The prognosis of her condition at that time was fair and that she should benefit from psychotherapy while outside the hospital. (Tr. 149).

Upon her March 25, 1959 discharge from Delaware State Hospital she was admitted as an out-patient to the Fernhook Mental Hygiene Clinic ("Fernhook"). (Tr. 62, 135). Although the progress reports from Fernhook indicate she attended only on July 22, 1959 (Tr. 135), March 1, 1969 (Tr. 136), November 14, 1969 (Tr. 137) and December 15, 1969 (Tr. 139), she claims to have been treated continuously at Fernhook from 1958. (Tr. 61, 63, 105).

On November 21, 1961 the claimant was readmitted to Delaware State Hospital and discharged on January 19, 1962; the diagnosis was psychotic depressive reaction. (Tr. 163). On October 21, 1962 she was readmitted (Tr. 112–123) and discharged on January 17, 1963; the diagnosis was again psychotic depressive reaction. (Tr. 122). On

January 10, 1964 she was readmitted and then discharged on April 3, 1964 with the same diagnosis of psychotic depressive reaction. (Tr. 163). The claimant's next hospital stay occurred on August 18, 1969 when she was admitted to the day hospital of the Fernhook Clinic. (Tr. 140). She was released on October 10, 1969. (Tr. 137). Finally, on January 3, 1971 she was once again admitted to the Delaware State Hospital. She was released on January 13, 1971 and her diagnosis was anxiety neurosis. (Tr. 163).

In recognition of this medical evidence, the Secretary concluded that the claimant "does have an emotional problem which has resulted in hospital stays in mental institutions, active psychiatric treatment, and may presently be of significant severity." (Tr. 9). However, the Secretary, in carrying out the second step of the two step test for determining whether a person is disabled, found that the evidence demonstrated that she in fact engaged in substantial gainful activity despite her serious medical problem. (Tr. 9).

### Work History

The evidence before the Secretary showed that the claimant worked full time (Tr. 101) at the Continental Diamond Fiber Company, now called the Budd Company ("Budd") from January 1950 until September 1953[7] (Tr. 84) during which time she worked as a spiral tube machine operator (Tr. 141) at a rate of $1.50 per hour (Tr. 101) and earned a total of $6,349. (Tr. 98). An employee working full time for the entire period at the $1.50 an hour rate would have earned over $9,000.[8] This would indicate that the claimant, during that period, worked less than 70% of the time.[9]

After her second marriage in 1953 until the alleged onset of her disability in 1958 the record indicates that the claimant earned a total of $2,388. (Tr. 98). Nearly half of this amount ($1,074) was earned in 1956 when her husband was laid off his job and the claimant obtained work at the National Vulcanizing Company. (Tr. 98, 141). From 1958 until 1963 the record shows nearly no work activity whatsoever on the part of the claimant. (Tr. 98). However, in 1963 the claimant earned $1,700, in 1965 she earned $1,647 and in 1966 she earned $2,987. (Tr. 98).

The claimant's 1963 income is credited to work activity at Gore and Associates, Inc. ("Gore") from February 25, 1963 to April 19, 1963 and at a Celanese plant ("Celanese") now owned by American Can Company. (Tr. 56, 156). She was discharged from Gore on account of "poor production due to personal difficulties." The records of her employment at Celanese could not be found (Tr. 162) but claimant states the reason for her termination there was that she could not keep up with the required production line work. (Tr. 58).

The claimant's 1965 and 1966 income is credited to work activity at Budd. The claimant was rehired in 1965 by Budd to work full time once again as a spiral tube machine operator at a rate of about $2.10 per hour. (Tr. 77). She worked until September 1965, then left Budd to go to California and upon her return to Delaware she was rehired. Her foreman Harry Shaw ("Shaw") "went really out of his way to try to help her and give her employment." (Tr. 71). In the years 1965 and 1966 the claimant was credited with having worked for six quarters and she earned a total of $4,634. (Tr. 98, 158, 159). An employee working full time for that entire period at the rate of $2.10 per hour would have earned over $6,500.[10] This would indicate that the claimant

---

7. During that period she was credited with having worked a total of 12 quarters. (Tr. 98).

8. $1.50 hour x 8 hours per day x 5 days per week x 13 weeks per quarter x 12 quarters during period equals $9,360.

9. $6,349/$9,360 equals 68%.

10. $2.10 per hour x 8 hours per day x 5 days per week x 13 weeks per quarter x 6 quarters equals $6,552.

during that period worked more than 70 percent of the time.[11] She was eventually fired from Budd because "there was something wrong" with her. (Tr. 52, 157). Shaw reports that she was in no condition to work in a plant and that had he fully known of her condition she would not have been hired. (Tr. 157).

After 1966, the year that she was forced to give up her adopted child (Tr. 57, 58) until the time she filed her claim in 1971, the claimant engaged in very little work activity and earned less than $600 during that entire period. (Tr. 98). The claimant did work as a maid for three months in 1968, but was forced to quit because the job involved too much responsibility. (Tr. 160). During 1972 the claimant apparently tried to work for NVF but was discharged due to her inability to satisfactorily perform her job duties. (Tr. 155). She had worked at NVF for only three weeks. (Tr. 50).

### Substantial Gainful Activity

The Secretary concluded that the claimant's work activity in 1963 and thereafter demonstrated her ability to engage in substantial gainful activity. The claimant argues that the proper test is whether an employer would retain a person with the claimant's admitted impairments and not whether she at one point actually did manage to earn some money despite her disability. The claimant cites a number of pre-1967 cases in support of this position.

The problem with the claimant's position is that the 1967 amendments to the Act overcame previous cases which had held that earnings are not a controlling factor in determining disability if an applicant is in fact medically and physically disabled. Hedge v. Richardson, 458 F.2d 1065, 1067 (C.A. 10, 1972); Wilson v. Richardson, 455 F.2d 304, 306–307 (C.A. 4, 1972); Harris v. Richardson, 450 F.2d 1099, 1101 (C.A. 4, 1971). The 1967 amendments gave the Secretary specific statutory authority to provide the quantity of earnings which will amount to substantial gainful activity within the meaning of the Act.

42 U.S.C. § 423(d)(4), as amended in 1967 provides:

"The Secretary shall by regulations prescribe the criteria for determining when services performed or earnings derived from services demonstrate an individual's ability to engage in substantial gainful activity."

An applicable regulation was promulgated pursuant to the authority granted, which provides:

"An individual's earnings from work activities averaging in excess of $140 a month shall be deemed to demonstrate his ability to engage in substantial gainful activity unless there is affirmative evidence that such work activities themselves establish that the individual does not have the ability to engage in substantial gainful activity under the criteria in § 404.1532 and § 404.1533 and paragraph (a) of this section." 20 C.F.R. § 404.1534(b).

In the Senate Report recommending the enactment of Section 423(d)(4), it was said:

"The committee also believes it is necessary to reaffirm that an individual who does substantial gainful work despite an impairment or impairments that otherwise might be considered disabling is not disabled for purposes of establishing a period of disability or for social security benefits based on disability during any period in which such work is performed. The language in the . . . bill, therefore, specifically provides that where the work or earnings of an impaired individual demonstrate ability to engage in substantial gainful activity under criteria prescribed by the Secretary, the individual is not disabled within the meaning of title II of the Social Security Act." U.S.Code, Cong. and Admin.News, 90th Cong., 1st Sess, p. 2883 (1967).

---

11. $4,634/$6,552 equals 71%.

■ Cases after the 1967 Amendment reaffirm the fact that earnings over $140 per month alone can provide substantial evidence that the individual is not "disabled," *Hedge, supra*, 458 F.2d at 1067–1068; Futernick v. Richardson, 484 F.2d 647, 648 (C.A. 6, 1973); Maher v. Weinberger, 378 F.Supp. 254 (D. Del.1974); Crites v. Weinberger, 364 F. Supp. 956, 960 (N.D.Texas 1973).

■ In the present case, the claimant earned $4,634 from Budd in six quarters in 1965 and 1966 for an average of over $250 per month. Thus, a rebuttable presumption arises under the above regulations that the claimant was able to engage in substantial gainful activity. The question then arises whether the Secretary erred in not applying the "unless" clause of 20 C.F.R. § 404.1534(b). Shutt v. Secretary of Health, Education and Welfare, 490 F.2d 43, 47 (C.A. 5, 1974); Eggleston v. Richardson, 351 F. Supp. 127, 128 (E.D.Pa.1972).

The criteria for applying the "unless" clause is set out in 20 C.F.R. §§ 404.-1532, 404.1533 and 404.1534(a). The most pertinent provisions of these regulations to the facts of the present case are the following: When an individual is found to discontinue his work activities after a "short" time because his impairment precludes continuing such activities, his earnings would not demonstrate ability to engage in substantial gainful activity. 20 C.F.R. § 404.-1534(a). In addition, an individual's failure, because of his impairment, to perform ordinary or simple tasks satisfactorily without supervision or assistance beyond that usually given others performing the same work, may also constitute evidence of an inability to engage in substantial gainful activity. 20 C.F.R. § 404.1532(d). But, if the time that an individual spends in work activities is comparable to the time customari-

ly spent by individuals without an impairment, the individual's ability to work for such periods constitutes evidence tending to show an ability to engage in substantial gainful activity. 20 C.F.R. § 404.1533.

Although some courts have confessed confusion over the meaning of the "unless" clause, Fuerst v. Secretary of Health, Education and Welfare, 354 F. Supp. 185 (S.D.N.Y.1973) and other courts have held that the "unless" clause is not limited by the examples given in the regulations, *Wilson, supra*, 455 F.2d at 307, the wording of the clause does clearly require evidence that the work activities themselves, which allowed the claimant to earn in excess of $140 per month, establish that the claimant does not have the ability to engage in substantial gainful activity.

In the present case, the claimant has submitted testimony by her husband that she was not physically able to perform her job at Budd (Tr. 52), and a letter dated February 9, 1973 from her supervisor, Shaw, stating in retrospect that the claimant was in no condition to work in a plant and that had he known of her condition she would not have been hired.[12] Balanced against this showing, however, is evidence that she was able, in spite of her serious condition, to maintain her job for two quarters in 1965 and then, after voluntarily leaving Budd, the same company rehired her for a third time and she was able to remain on their payroll for four quarters in 1966. Thus, her work activity in 1965 and 1966 can not be said to be sporadic or only covering a short period of time. Furthermore, there is no evidence that the claimant failed, because of her serious condition, to perform ordinary or simple tasks without abnormal supervision or assistance. And finally there is no evidence in the record that the claim-

---

12. "Bertha Sanborn worked for me at the 'Budd' Co. Polychem Division at Newark, Delaware part of the year 1965 and 1966. Mrs. Sanborn was in no condition to work in a plant and had I fully known she would not

of [sic] been hired. She is a highly nervous person and unfit for employment in our plant. After observing her emotional state I laid her off." (Tr. 157).

ant spent less time at her work activities than individuals without her impairment. In fact the only evidence presented on this point tends to demonstrate that the claimant actually spent the same if not more time at work in 1965 and 1966 than she did before her impairment from 1950 until 1953 when she worked at the same job.[13]

Moreover, the fact that the claimant would apparently not have been hired at Budd had her condition been known is under the current law of little consequence since the relevant inquiry is not whether the claimant is able to obtain employment at some substantial gainful activity but whether the claimant was able to engage in such activity. Brown v. Finch, 429 F.2d 80, 82–83 (C. A. 5, 1970); Gentile v. Finch, 423 F.2d 244 (C.A. 3, 1970). Consequently, the fact that she did engage in work activities during 1965 and 1966 controls the outcome of this case despite the fact she may not now be rehired by Budd.

The Court, unfortunately, may not properly look to the claimant's courage and will to work in spite of her condition. *Fuerst, supra,* 354 F.Supp. at 188. This Court is bound by the inferences drawn by the Secretary if supported by substantial evidence even though it might have reached an opposite conclusion if it were free to consider the matter *de novo.* Henry v. Gardner, 381 F.2d 191, 194 (C.A. 6, 1967), cert. denied, 389 U.S. 993, 88 S.Ct. 492, 19 L. Ed.2d 487 (1967), rehearing denied, 389 U.S. 1060, 88 S.Ct. 797, 19 L.Ed.2d 864 (1968); Palmer v. Celebrezze, 334 F.2d 306, 308 (C.A. 3, 1964). In view of the evidence before the Secretary, the Court concludes that there was substantial evidence for the finding that the claimant was able to engage, and in fact did engage, in substantial gainful activity at least during the years 1965 and 1966 and the Court is therefore bound by that finding.

*Eligibility*

The final inquiry is to determine whether the factual finding of the Secretary that the claimant was able to engage in substantial gainful activity during the years 1965 and 1966 prevents her from receiving a period of disability and disability insurance benefits under 42 U.S.C. §§ 416(i) and 423. The starting point for this inquiry is the requirements set out by the Act and the regulations promulgated thereunder. For a *period of disability* to begin a person must have the requisite number of quarters of insurance coverage set out in 42 U.S.C. § 416(i)(3) [14] and to be eligible for *disability benefits* a person must have the requisite number of quarters of insurance coverage set out in 42 U.S.C. § 423(c).[15] The claimant last met these coverage requirements on September 30, 1960. (Tr. 10 and 98).[16] Thus, the Secretary correctly found that in order to be entitled to a period of disability or to disability benefits it is at least necessary for the claimant to establish that she was "under a 'disability' from a time prior to September 30, 1960." (Tr. 9). Domozik v. Cohen, 413 F.2d 5, 6 (C.A. 3, 1969).

The fact that the claimant was able to engage in substantial gainful activity during the years 1965 and 1966 means that she was not disabled within the meaning of the Act during at least those years. Furthermore, there is no evidence in the record to show that her condition improved between 1960 and 1965, instead the record indicates her condition was the same or worse after 1960. (Tr. 66, 100). These two facts may then logically be extrapolated to the conclusion that the claimant was also not disabled prior to September 30, 1960 as the Secretary found. (Tr. 10).

However, it was unnecessary for the Secretary to reach the conclusion that the claimant was not under a disability prior to September 30, 1960; the fact

---

13. See text accompanying footnotes 8 through 11, *supra.*

14. 42 U.S.C. § 416(i)(2)(C).

15. 42 U.S.C. § 423(a).

16. The claimant has not disputed this finding by the Secretary.

that she was able to engage in substantial gainful activity during the years 1965 and 1966 in and of itself was sufficient in view of the present record to deny her claim for a period of disability or disability benefits regardless of her disability status prior to September 30, 1960. This conclusion is based on the regulations.[17]

First, the pertinent regulations require that in order to establish a *period of disability* the claimant must have filed an application no later than 14 months after her disability ceases, 20 C.F.R. §§ 404.310(a)(3), 404.310(b) and 404.311a(b), and her disability ceases the month in which she has regained her ability to engage in substantial gainful activity. 20 C.F.R. § 404.1539(a)(2). Thus, even if the claimant had been disabled prior to September 30, 1960, the fact she was able to engage in substantial gainful activity during 1965 and 1966 would have ended any period of disability that could have begun prior to those years and her application, which was filed on August 9, 1971 (Tr. 83), clearly comes too late under 20 C.F.R. § 404.310(b) to establish any period of disability ending in 1965 or 1966. In addition, the claimant can not, on the present record, establish any period of disability beginning after 1966 since to do so she must meet the coverage requirements of § 42 U.S.C. § 416(i)(3) after 1966 [18] and she has not met those requirements since September 30, 1960.[19] In other words, the fact that the claimant was able to engage in substantial gainful activity during the years 1965 and 1966 precludes her on the present record from now establishing any period of disability within the meaning of the Act.

Second, the regulations require that "To become entitled to a *disability insurance benefit* . . . an individual must meet the insured status requirement for disability insurance benefits as of the first full month that he was under a disability . . . or as of the 18th month . . . prior to the month in which the application for disability insurance benefits is filed, whichever is later." [Emphasis added]. 20 C.F.R. § 404.115(b).

Applying this requirement to the present case, the first full month in which the claimant claims to have been under a disability was June 1958 (Tr. 83) and the 18th month prior to the month in which the application for disability insurance benefits was filed was February 1970.[20] The later of these two dates is, of course, February 1970 and therefore 20 C.F.R. § 404.115(b) requires that the claimant must have met the "insured status requirement for disability insurance benefits" as of or after [21] February 1970.

The regulations require that in order to meet the "insured status requirement for disability insurance benefits" in a given month the claimant must at least have not less than 20 quarters of coverage during the 40 quarter period which ends with the quarter in which such month occurred. 20 C.F.R. § 404.116(b)(2)(i). The regulations also provide that in determining the 40 quarter period any quarter which is a part of a period of disability is not counted as part of the 40 quarter period. 20 C.F.R. § 404.116(c).

In the present case, the Court has previously found that there was sub-

---

17. Also see Henry v. Gardner, 381 F.2d 191, 195 (C.A.6, 1967); Bailey v. Richardson, C.A.No.4163 (D.Del. filed June 21, 1972) and McGaha v. Ribicoff, 262 F.Supp. 161 (D.Del.1966).

18. 42 U.S.C. § 416(i)(2)(C).

19. Note 16 *supra*.

20. The application was filed August 9, 1971. (Tr. 83).

21. "If the individual does not meet the insured status requirement at such time [February 1970], he will be insured for disability insurance benefits purposes as of the first month thereafter in which he acquires such insured status provided that at such time he meets all other requirements for disability insurance benefits." 20 C.F.R. § 404.115(b).

stantial evidence to support the fact that the claimant engaged in substantial gainful activity during the years 1965 and 1966 which precluded her from establishing any period of disability and as a result she can not utilize the advantages in computation of the 40 quarter period afforded by 20 C.F.R. § 404.-116(c). In view of this and the evidence on record the Court finds that the claimant *last* had 20 quarters of coverage within a prior 40 quarter period and, therefore, *last* met the "insured status requirement for disability insurance benefits" in September 1960. (Tr. 98). Thus, the claimant is not now entitled to disability insurance benefits regardless of whether or not she was disabled prior to September 30, 1960, because she failed to meet the "insured status requirement for disability insurance benefits" as of or after February 1970 as is required by 20 C.F.R. § 404.115(b).

Consequently, in light of the fact that there was substantial evidence to support the Secretary's finding that the claimant was able to engage in substantial gainful activity at least during 1965 and 1966 and upon applying the law as discussed above to that factual finding, the Secretary's decision to deny the claimant a period of disability and disability benefits must be affirmed.

### ORDER

For the foregoing reasons, it is ordered that the decision of the Secretary is hereby affirmed.

### ON MOTION FOR REARGUMENT

The Court entered an opinion and order in this case on September 24, 1974 and the claimant, Bertha M. Sanborn, has moved for reargument.

The claimant's first ground for reargument is based on the contention that the Court improperly applied regulations promulgated by the Secretary on August 20, 1968 to determine the claimant's ability to engage in "substantial gainful activity" as demonstrated by earnings in 1963, 1965 and 1966. The claimant argues that the regulations were made retroactive only for months after August, 1965. The Court finds no merit to this contention.

The regulations, 20 C.F.R. §§ 404.1532–404.1534, relied upon by the Court to determine the claimant's ability to engage in "substantial gainful activity"[1] were promulgated pursuant to the authority given to the Secretary by 42 U.S.C. § 423(d)(4)[2] and 42 U.S.C. § 423(d)(4) is effective with respect to applications filed on or after January, 1968, the month in which § 423(d) was enacted.[3] Since the claimant's application was not filed until August, 1971,[4] she is subject to the provisions of § 423(d) and regulations 20 C.F.R. §§ 404.1532–404.1534 all of which were made effective substantially before the claimant asserted any rights in August, 1971.[5]

The claimant's second ground for reargument is based on a contention, now asserted for the first time, that her earnings during 1966 should be regarded as a "trial period" under 42 U.S.C. § 422(c) and thus should be disregarded in determining whether her disability ceased in that period. 42 U.S.C. § 422(c)(3), which has not been amended since 1960, provides that: "A period of trial work for any individual shall begin with the month in which he becomes entitled to disability insurance benefits . . . ." and 42 U.S.C. § 423(a)(1)(C), which has never been amended, requires that in order for an individual to become entitled to disability insurance benefits he must have filed an applica-

---

1. Opinion, pp. 865–867.

2. Opinion, p. 865.

3. Section 158(e) of Pub. L. 90–248 (Jan. 2, 1968).

4. Opinion, p. 862.

5. 20 C.F.R. §§ 404.1532 and 404.1533 were made effective upon their publication in the Federal Register on August 20, 1968. (33 F.R. 11749). § 404.1534 was made effective upon publication in the Federal Register on January 10, 1969. (34 F.R. 387).

tion for such benefits. Thus, the claimant's work activities in 1966 could not possibly be regarded as a trial period since she was not entitled to begin a trial period until after she filed her application in August, 1971. This interpretation of the law is confirmed by the regulations which provide that no period of trial work can begin "before the month in which application is filed. . . ." 20 C.F.R. § 404.1536(c), effective August 20, 1968. Accordingly, claimant's second ground for reargument is also without merit.

The claimant's final ground for reargument is that the Court incorrectly categorized the judicial authorities in support of claimant's position as "pre-1967 cases" and that in fact the cases cited on Pages 9 and 10 of the claimant's brief, including Norwood v. Finch, 318 F.Supp. 739 (E.D.Tex.1970) and Young v. Weinberger, 366 F.Supp. 81 (D.Md.1973) control the present case.

The Court did not blindly categorize the claimant's entire legal argument as being based on pre-1967 cases. The pre-1967 authorities cited by the claimant were disregarded only in so far as they held that the proper test for determining whether an individual has the ability to engage in substantial gainful activity is dependent upon whether an employer would retain the individual. As pointed out in the opinion this is no longer the proper test and, therefore, the six "pre-1967" cases cited on Page 8 of the claimant's brief are no longer valid authority on this point of law.

A quote on Page 9 of the claimant's brief from Norwood accurately states that:

" 'the relevant inquiry is not whether the claimant is able to obtain employment at some substantial gainful activity that exists in the national economy, by [sic] whether the claimant is able to engage in such activity,' Brown v. Finch, 427 [429] F.2d 80 at 82 (5th Cir. 1970)."

Thus Brown was used by the Court at page 867 of the opinion as authority supporting the conclusion that under the current law the fact an employer would not retain an individual is of little consequence if in fact there is substantial evidence, as there was in this case, that the individual did actually engage in substantial gainful activity. To the extent Norwood was based on a hypothetical ability to engage in substantial gainful activity it is inapposite since in the present case hypotheticals were unnecessary; the claimant had in fact engaged in such activity.

In Bailey v. Richardson, C.A. No. 4163 (D.Del. filed June 21, 1972) cited on Page 9 of claimant's brief, the Court in applying the same regulations used in the present case, 20 C.F.R. §§ 404.1532–404.1534, apparently found that the facts of that case fell within the "unless clause" of 20 C.F.R. § 404.1534[6] and Young cited on Page 10 of claimant's brief again deals with a hypothetical situation and, thus, is inapposite.

As a result of the above discussion the Court concludes: (1) that the correct statutes and regulations were applied in determining the claimant's ability to engage in substantial gainful activity; (2) that the claimant's earnings during 1966 can not be regarded as a "trial period"; and (3) that the cases cited by the claimant on Pages 10 and 11 of her brief were considered and applied to the extent required. In light of these conclusions, the claimant's motion for reargument will be denied.

6. See Bailey, pages 14 and 15 of slip opinion.