**Harold HOPE**

v.

**SECRETARY OF HEALTH, EDUCATION AND WELFARE.**

**Civ. A. No. 6404.**

United States District Court,
E. D. Texas,
Beaumont Division.

Aug. 2, 1972.

Ernest L. Sample, Beaumont, Tex., for plaintiff.

Robert Nicholas, Asst. U. S. Atty., Beaumont, Tex., for defendant.

## MEMORANDUM OPINION AND ORDER

JUSTICE, District Judge.

In this stage of a social security case the court is asked by the defendant to reconsider its order of July 8, 1971, remanding this case to the Secretary for the reception of additional evidence. The issue is whether the claimant Harold Hope is entitled to a period of disability and monthly disability insurance benefits under Sections 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i), 423. A decision by the Hearing Examiner denying his claim was affirmed by the Appeals Council on June 30, 1969. An affirmance by the Appeals Council constitutes a final decision of the Secretary that is ripe for review by the district court under 42 U.S.C. § 405(g). Although the motion to reconsider the order to remand will be denied, I will elaborate on my earlier opinion.

Claimant Harold Hope, a black man born on October 10, 1916, lives with his wife and five children, whose ages range from three to nine years. Although he quit school in the middle of his tenth year, Hope can read and write satisfactorily. He began work as a porter and delivery boy in a grocery store, then a drug store, and thereafter worked on an "as needed" basis for a refinery by scraping and cleaning tanks and by cleaning up the grounds. During most of World War II, he worked in a ship-

yard by cleaning up the yard, preparing metal surfaces for painting, and carrying away scrap materials that could be salvaged. Following his work in the shipyard, Hope worked in service stations, washing, waxing and greasing cars, sometimes changing and repairing tires, and occasionally pumping gasoline. From about 1948 to 1952, he was employed by an automobile dealer as a porter or general handyman to wash, wax, and deliver cars.

In 1952 Mr. Hope began work as a janitor with the American National Bank in Beaumont. Subsequently, he was promoted to parking lot attendant, and then to a combination position of porter and bank runner. As bank runner, he handled a variety of errands, including the collection of checks paid without sufficient funds. As porter, he performed general manual labor duties. In January of 1967, while stacking boxes of stationery, envelopes, and IBM cards in a supply room, Hope fell with a load of boxes and injured his back.

Immediately following the accident, Hope was treated by Dr. Esslinger, and upon the doctor's recommendation he attempted to return to work. Nevertheless, back pain continued through March 1967, at which point he could no longer work. Dr. Esslinger placed Hope in the hospital, applied traction and medication, made X-rays, and turned him over to an orthopedist. Dr. Alexander, the orthopedist, sought the advice of Dr. Rafes, a neurosurgeon, who diagnosed either a ruptured intervertebral disc or tumor on the spine. The required surgery confirmed a ruptured disc. Dr. Rafes recommended that Hope return to work; Dr. Alexander concurred but prescribed for Hope a back brace and physiotherapy.

Hope attempted to return to the bank to work in September 1967, but was informed by his supervisor that he was no longer employed. Although the uncontroverted testimony of fellow bank employees was that the claimant was conscientious, worked overtime when asked to do so, rescheduled his vacation numerous times in 1966 at the bank's request and then took no vacation at all, the bank nevertheless no longer valued his services. The hearing examiner found that "[i]t is probable that the employer had concluded that Mr. Hope was physically unable to resume all of the duties he had formerly performed" and that his filing a workman's compensation claim "was frowned upon by the employer, and was a factor in its decision not to permit Mr. Hope to return to his job or to give him any other kind of work he might be able to do." Record, at 35.

■■ Review by this Court of the findings of the Secretary is limited to a determination of whether the Secretary applied the proper standards in reaching his decision, see Knox v. Finch, 427 F.2d 919 (5th Cir. 1970), and whether that decision is supported by substantial evidence, see Hayes v. Celebrezze, 311 F.2d 648, 651 (5th Cir. 1963). 42 U.S.C. § 405(g). To determine whether the hearing examiner's decision on the claimant's qualification, or lack of qualification, for statutory disability is supported by substantial evidence, the Court considers four elements of proof: (1) clinical findings of the treating or examining physicians on the existence of a medically determinable physical or mental impairment; (2) opinions of the treating or examining physicians on the subsidiary questions of fact that relate to the severity of the medically determinable impairment; (3) testimony of the claimant, corroborated by his family and neighbors, concerning the effect of the medically determinable impairment on the claimant; and (4) evidence of the claimant's educational background, work history, and present age. Underwood v. Ribicoff, 298 F.2d 850, 851–852 (4th Cir. 1962).

Two conclusions of the hearing examiner bear scrutiny. The first is that the claimant's *physical* impairment does not preclude his participation in any kind of substantial gainful work that exists in the national economy. The testimony is uncontroverted that a myelogram and

other medical workups of the claimant revealed a partial ruptured intervertebral disc between the fourth and fifth lumbar vertebrae on the left and that a hemilaminectomy was performed. Although Hope continued to complain of pain in his legs and back, two of the three doctors examining him—Dr. Alexander, the orthopedist, and Dr. Rafes, the neurosurgeon—concluded that Hope's symptoms have "no appreciable physiological basis and were grounded in a functional overlay." Record, at 35. The third doctor, an osteopathic physician and surgeon named Dr. Griffen, disagreed. He concluded that the laminectomy was "unsuccessful," that the continued complaints of pain are due to muscle spasms, and that Hope is "permanently and totally disabled." *Id.*

To resolve this conflict in medical testimony on whether the medically determinable impairment—either physical or mental—constituted a statutory disability, the hearing examiner relied on a medical adviser, a specialist in physical medicine and rehabilitation who appeared at the hearing. The medical adviser, Dr. Leavitt, assembled the findings of the various specialists testifying and assessed the claimant's capacity for work. Agreeing with Drs. Alexander and Rafes, Dr. Leavitt stated that Mr. Hope is capable of "light and semi-sedentary work-related activities." Additionally, the examiner considered the testimony of a vocational expert, Mr. Buller, and concluded that the jobs enumerated by him are consistent with the claimant's age, education, and work experience and exist in significant numbers in the national economy.

The examiner's second conclusion is that the claimant's *neuropsychiatric* impairment, either alone or in combination with his physical impairment, does not preclude his participation in any kind of substantial gainful work that exists in the national economy. As was true with the evidence relating to the claimant's physical impairment, the testimony concerning the neuropsychiatric impairment was not in dispute on the *existence* of

the impairment. Conflicts in the expert testimony on the *significance* of this impairment were similarly resolved against the claimant through reliance on the testimony of the medical adviser and vocational expert. Both Drs. Alexander and Rafes concluded that the claimant's symptoms were grounded in a functional overlay. Moreover, Dr. Bailey, a psychiatrist who examined the claimant, concluded that Hope has a reactive depression to a mild degree "with a good prognosis on adequate therapy for his nervous condition." Record, at 30. Dr. Leavitt, the medical adviser, summarized the testimony by concluding that Hope had more of a reactive depression than expected of an ordinary person with a back injury, and that this reactive depression constituted an impairment manifested through functional overlay and dizziness, upset stomach, and pain in the lower extremities. Record, at 32.

To clarify his use of the term functional overlay, Dr. Leavitt testified that

> functional overlay . . . means there is no volitional effort of the person, whoever he might be, to cause himself a problem which prevents him from doing a task. But he is not conscious of this, and it is just *a combination of psyche disturbances which results in an individual's not being able to perform in an adequate way due to these complaints of which he is not actually aware of.*

Record, at 32. (Emphasis added).

In determining whether a particular medically determinable impairment constitutes a statutory disability, a mental impairment is accorded no less credence than a physical impairment. Page v. Celebrezze, 311 F.2d 757, 763 (5th Cir. 1963); Norwood v. Finch, 318 F.Supp. 739, 741–743 (E.D.Tex.1970).

The fundamental error of the hearing examiner was his failure to consider the evidence of Hope and his family and friends—the third element of proof discussed earlier—in reaching his conclusions on the physical and mental

impairments. As the examiner in his evaluation of the evidence concedes,

> with respect to the numerous lay witnesses on Mr. Hope's behalf, his attorney was quite scrupulous to make it clear that they were not experts in medical matters. *Thus, their testimony is not particularly illuminating to resolve the medical questions presented in this record.*

Record, at 35. (Emphasis added). This is simply an erroneous conclusion. This testimony from Hope and his family and friends may be not only "illuminating," but *crucial* in the resolution of the ultimate issue of whether the claimant is entitled to statutory disability benefits.

██ If the testimony of medical experts—the first two elements of proof discussed earlier—is very strong in favor of disability, testimony from the claimant and his family and friends will be significant corroboration. If the evidence from the medical experts is inconclusive, evidence from the claimant is not only significant, but essential to the resolution of the conflict. Underwood v. Ribicoff, *supra.* Courts often refer to these first two elements of proof as "objective" evidence—that is, testimony from doctors as to whether particular symptoms *should* indicate a specific medically determinable impairment and testimony from doctors and vocational experts on whether that impairment *should* be severe enough to be disabling. Similarly, reference to "subjective" evidence means that testimony from the claimant, corroborated by his family and friends, as to whether a specific impairment *actually* affects the claimant to such an extent as to be disabling. Failure to consider this subjective evidence of pain is ground for reversal, with or without remand. Hayes v. Celebrezze, 311 F.2d 648, 653–654 (5th Cir. 1963).

Considerable testimony from the claimant, corroborated by his family and friends, appears in the record. Hope testified that he still has pain in his back and left leg, and that even the comparatively simple task of driving his car causes headaches, back aches, and nervousness. Recently, he has begun to experience blackouts and periods of dizziness that cause him to fall. Mrs. Hope testified that she must assist her husband undress and lie down, that he has trouble sleeping, and that his blackouts and periods of dizziness never occurred prior to his accident. Other lay witnesses testified that although prior to the accident Hope was hard working, he now appears sick, weak, in pain, and unsteady on his feet.

██ The district court may, at any time, on good cause shown, order additional evidence to be taken before the Secretary. 42 U.S.C. § 405(g). Because administrative hearings in the social security field are informal and nonadversary, courts do not require a showing of good cause that is as technical or cogent as that required to justify the vacation of a judgment or the granting of a new trial, provided that no party will be prejudiced by the acceptance of additional evidence and provided that the evidence offered bears directly and substantially on the matter in dispute. *See, e. g.,* Sage v. Celebrezze, 246 F. Supp. 285 (W.D.Va.1965); Butler v. Folsom, 167 F.Supp. 684, 689 (W.D. Ark.1958); Wray v. Folsom, 166 F. Supp. 390, 394–395 (W.D.Ark.1958). Good cause for remand and the reception of further evidence exists when the Secretary applied improper standards in reaching his decision, *see, e. g.,* Moncrief v. Gardner, 357 F.2d 651 (5th Cir. 1966), or when the decision of the Secretary is not supported by substantial evidence, *see, e. g.,* Hayes v. Celebrezze, *supra,* 311 F.2d at 654 (5th Cir. 1963). Thus good cause exists for remand to the Secretary for the reception of any evidence deemed necessary to reconsider the findings in light of the testimony of Mr. Hope, corroborated by his family and friends, on the issues of possible physical or mental disability.

A second ground for remanding this case to the Secretary is raised by the uncontroverted testimony of Dr. Bailey, accepted by the medical adviser, Dr.

Leavitt, that the claimant should be on anti-depressive drugs and seen regularly on an outpatient basis. At the time of the hearing, Hope was taking only two medications, a tranquilizer and a muscle relaxant. This testimony raises consideration of the circumstances under which a possibly disabling impairment that is remedial may still qualify as a disability.

■ The applicable part of the relevant regulation, proscribed by the Secretary under 42 U.S.C. § 405(a), reads as follows:

For purposes of entitlement to a period of disability or to disability insurance benefits . . . an individual's impairment must also be expected to result in death or to have lasted or be expected to last for a continuous period of not less than 12 months. An individual with a disabling impairment which is amenable to treatment that could be expected to restore his ability to work shall be deemed to be under a disability if he is undergoing therapy prescribed by his treatment sources but his impairment has nevertheless continued to be disabling or can be expected to be disabling for at least 12 months. However, an individual who willfully fails to follow such prescribed treatment cannot by virtue of such failure be found to be under a disability. Willful failure does not exist if there is justifiable cause for failure to follow such treatment.

20 C.F.R. § 404.1507 (1971). Although the regulation quoted above, reflecting the statutory changes in the definition of disability, was published on August 20, 1968, see 33 Fed.Reg. 11749 et seq. —approximately four months prior to the hearing examiner's final decision on December 16, 1968—nothing in the record indicates that the examiner considered this change in the law. Failure of the hearing examiner to consider a change in the law making the standard for recovery less stringent, even if the change comes after the hearing examin-

er's decision is finalized, is good cause to remand to the Secretary to consider such change in the law. Byrd v. Gardner, 358 F.2d 291 (5th Cir. 1966); Sergeant v. Gardner, 361 F.2d 334 (6th Cir. 1966); Nichols v. Gardner, 361 F.2d 963, 967 (8th Cir. 1966); see generally, Bohms v. Gardner, 381 F.2d 283, 286 (8th Cir. 1967).

■ Prior law declared that an individual would not be deemed under a disability if, with reasonable effort and safety to himself, "the impairment can be diminished to the extent that the individual will not be prevented by the impairment from engaging in any substantial gainful activity." 20 C.F.R. § 404.-1502(g), amended, 20 C.F.R. § 404.1507 (1971); see Purdham v. Celebrezze, 349 F.2d 828, 839 (4th Cir. 1965); Stillwell v. Cohen, 411 F.2d 574, 575–576 (5th Cir. 1969); Henry v. Gardner, 381 F.2d 191, 195 (6th Cir. 1967). The present regulation permits an individual with a disabling impairment to recover benefits even though the impairment is amenable to treatment that can be expected to restore his ability to work *if, with treatment, his impairment continues to be, or can be expected to continue to be, disabling for at least twelve months.*

On remand the hearing examiner should consider the following:

(1) Whether, in light of the consideration of the evidence from Hope as corroborated by his family and friends, either the physical or neuropsychiatric impairment, or both such impairments, constitutes a statutory disability;

(2) If so, whether this disability is amenable to treatment that can be expected to restore Hope's ability to work and whether such treatment has been prescribed;

(3) If the prescribed treatment has been followed, whether Hope's impairment has continued to be disabling for at least twelve months;

(4) If the prescribed treatment has not been followed, whether Hope's failure to follow the treatment was due to a justifiable cause.

Although the phrase "justifiable cause" of Section 404.1507 adds new rhetoric to the regulations, its meaning is not unclear in light of the judicial gloss placed on the former Section 404.-1502(g). The rule was well settled under the former regulation that only the claimant with a disabling impairment that *reasonably* can be classified as remediable is not entitled to benefits. Purdham v. Celebrezze, 349 F.2d 828, 830 (4th Cir. 1965); Ratliff v. Celebrezze, 338 F.2d 978 (6th Cir. 1964). Thus in *Ratliff* the claimant's refusal to undergo a spinal fusion—the proposed remedy to his impairment—was held to be reasonable on two grounds: first, one of the examining physicians stated that he could not be absolutely certain that the operation would rehabilitate the claimant to the point that he might resume his usual activities; and, secondly, "the operation and the attendant hospital care would cost approximately $1,500 out of the pocket of this poor man, who stated that he did not have the money to pay for the operation." Ratliff v. Celebrezze, *supra*, 338 F.2d at 980–981. *See also* Martin v. Ribicoff, 195 F.Supp. 761, 772 (E.D.Tenn.1961) (claimant's great fear of an operation held to be reasonable ground for refusing to remedy his impairment).

 Recently the Fifth Circuit has noted its approval of this line of cases in construing Section 404.1507 of the Code of Federal Regulations. McCarty v. Richardson, 459 F.2d 3 (5th Cir. 1972). Since a claimant with ample financial resources is not required to undergo "any and all surgical procedures" suggested by his physician in order to claim an independent basis of justifiable cause for not remedying a disabling impairment and thus is entitled to benefits, *cf.* McCarty v. Richardson, supra, Purdham v. Celebrezze, *supra*, it follows that a person without sufficient financial resources who is thereby *precluded* from undergoing the prescribed treatment to remedy a disabling impairment states an independent basis of justifia-

ble cause and is entitled to benefits, *cf.* Ratliff v. Celebrezze, *supra*, 338 F.2d at 980–981. Thus the hearing examiner, in determining whether Hope has justifiable cause for the failure, if any, to follow the treatment prescribed for his neuropsychiatric impairment, should consider among other grounds that may be asserted by the claimant, his financial ability to pursue twelve months of treatment. Accordingly, it is

Ordered that the government's motion for reconsideration of this Court's prior order is denied.