**J.W. TAYLOR, Plaintiff-Appellant,**

v.

**Otis W. BOWEN, Secretary, Health and Human Services, Defendant-Appellee.**

No. 85-1471
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Feb. 18, 1986.

Mark Heller, Wichita Falls, Tex., for plaintiff-appellant.

Marvin Collins, U.S. Atty., Howard A. Borg, Asst. U.S. Atty., Ft. Worth, Tex., A. Faye Dance Sheppard, Thomas Stanton, Houston, Tex., for defendant-appellee.

Before RUBIN, JOHNSON and JONES, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

Guided by all the limitations on judicial review of decisions of the Secretary of Health and Human Services denying disability benefits, we find, nonetheless, that there is no substantial evidence in the record to support the denial of benefits to this claimant for the period from January 21, 1982, to July 26, 1984, when disability benefits were awarded in a separate proceeding. Accordingly, we reverse the decision denying benefits for that period.

I.

J.W. Taylor is a 56-year-old man, six feet six inches tall, who weighs 275 pounds. He has only a sixth-grade education. For thirty years, he worked regularly as a truck driver despite a congenital abnormality in his feet. His right foot has an excessively high arch, called pes cavus: the toes contract up above the foot and do not touch the ground. The toes on Taylor's left foot are not equally affected, but they also contract up and do not touch the ground when he stands. As a result, while Taylor's left foot requires a size 13 shoe, his right foot needs only size 10. These abnormalities cause painful pressure on the metatarsal heads on the under surface of his feet and have led to the formation of calluses beneath the metatarsal heads.

As a result of another health problem, Taylor began having pain in his knees in 1978 but was able to continue working by taking prescription anti-inflammatory

drugs. On January 21, 1982, he was seriously injured in an accident when his truck jackknifed. He was hospitalized for four days, then released with instructions to take muscle relaxants and analgesics to relieve the pain, to use a heating pad on his knees, and to take hot baths. He continued to complain of pain and was referred by his worker's compensation insurer to an orthopedist a few weeks later. The orthopedist thought Taylor was suffering from cervical strain and prescribed medication. When, in April, Taylor continued to complain of pain in his left chest and left knee, the orthopedist ordered bone scans. These showed that Taylor had suffered fractured ribs and that he had advanced degenerative disease of the left knee.

Taylor also complained of numbness in his hands. An electromyogram revealed bilateral carpal tunnel syndrome, so he underwent successive carpal tunnel release operations in June and September, 1982. Taylor was left with a permanent loss of dexterity of fifteen percent in his right hand and twenty percent in his left hand. The orthopedist anticipated that Taylor would have a further period of temporary total disability lasting until November. Subsequent progress reports show that Taylor's recuperation from the wrist surgery lasted into January, 1983. While it is not clear that the carpal tunnel syndrome resulted from the truck accident, Taylor had been continuously disabled since that happened six months before.

Taylor continued to suffer knee pains. In October, the orthopedist found that he had rather severe degenerative joint disease, but his pain was controlled with Feldene, a drug that has anti-inflammatory as well as analgesic properties.

In January 1983, Taylor began to suffer problems with his feet. He testified that, as a result of the hot baths, which the doctor had prescribed for his knees, the calluses on his feet softened and began to peel. When he began the exercise program prescribed by his doctor, Taylor testified, bleeding ulcers began to develop on the bottom of his feet.

Taylor was examined by an orthopedic surgeon on April 26, 1983, who found ulcers beneath the first and fourth metatarsal heads on his right foot. Taylor told the surgeon that the ulcers definitely were not present more than eight weeks earlier. Surgery was recommended, but could not be performed until antibiotics reduced the infection. Until then, Taylor was required to stay off his feet and to keep them elevated. The doctor prescribed Keflex, which reduced the infection, but Taylor testified that he was unable to afford the recommended foot operation.

The Social Security Administration rejected Taylor's application for benefits on June 13, 1983. Taylor requested reconsideration, which was denied. The examiner concluded that Taylor's disability resulting from the truck accident and his wrist surgery had not disabled him for the requisite twelve months. His disability from the bleeding ulcers on his feet "with proper treatment should resolve prior to the passage of twelve months," and so could not justify disability payments either.

In the meantime, his foot infection continued. His physician, in a letter dated September 22, 1983, wrote that Taylor was unable to walk without a custom-made walker, and could not bear weight, lift, drive, or do any physical labor. The physician stated that Taylor had been thus disabled continuously since the truck accident in January, 1982. He opined that Taylor's condition would not improve, and that he would not be able to return to work until approximately three months after foot surgery was performed.

Thereafter, on September 26, 1983, an administrative law judge held a hearing on Taylor's request for reconsideration. Taylor testified that he was unable to do any work and had to keep his feet elevated at all times. On October 10, Taylor obtained funds for surgery from the Texas Rehabilitation Commission, and his physician amputated the fourth metatarsal on his right foot because of osteomylitis. This was reported to the Social Security Administration on November 30.

The administrative law judge did not render his report until March 13, 1984, six months after the hearing. The ALJ found that Taylor had not worked since his accident in January 1982, that he could not return to his former work, and that he was suffering severe impairments. He also found, erroneously however, that Taylor had a high school education and, apparently taking both this and Taylor's physical condition into account, could perform a full range of light work.

The Social Security Administration regulations that define light work require the ability to frequently lift or carry objects weighing up to ten pounds and "a good deal of walking or standing."[1] Even sedentary work, as defined in the regulations, includes occasional lifting of up to ten pounds and a moderate amount of walking, standing, and carrying.[2] Although the evidence in the record showed that Taylor was incapable of these efforts at the time of the hearing, the ALJ found that the corrective surgery recommended for Taylor's feet would lead to a full recovery within four months.

In May, Taylor appealed the administrative law judge's denial of benefits to the Social Security Administration Office of Hearings and Appeals. In support of his appeal, Taylor furnished letters from his doctors stating that he continued to have osteomylitis of the fourth toe on his right foot and his diabetes had resulted in the continued development of ulcers on the bottoms of his feet. Despite the corrective surgery, he had not recovered as expected, and could not yet walk normally or work.

On June 11, 1984, the Appeals Council denied Taylor's request for review. In an explanatory letter sent two weeks later, a member of the Appeals Council wrote that the Council was of the opinion that Taylor could do light work. Although the ALJ had mistaken Taylor's level of education, the regulations directed a finding of "not disabled" for a claimant with a sixth grade education capable of light work. Although the Appeals Council had before it uncontradicted evidence that Taylor had been unable to meet the level of exertion defined by the regulations as necessary for light work, that the disabling condition of his feet had continued unalleviated for over fifteen months, and that the ALJ's decision had been premised in part on an anticipated recovery that had not occurred, it found no reason to vacate the decision. Taylor then appealed to the courts.

The district judge rendered summary judgment dismissing Taylor's action, stating that the Secretary's decision was supported by substantial evidence. Despite evidence in the record that the surgery had not in fact resulted in a cure, the judge wrote, "Since his treating physicians concluded that Taylor would probably have a full recovery within 3 months of the recommended surgery—significantly less than the 12-month durational requirement for an impairment—his infected feet cannot serve as a basis for a finding of disability." She later denied a motion to alter the judgment because financial necessity required Taylor to defer the operation and remain disabled, stating

> Even accepting that inability to pay for recommended medical treatment constitutes "a good reason" within the meaning of 20 CFR § 404.1530(b), the evidence in the record on the question of inability to pay is inconclusive at best. *See* Tr. at 40–42 (discussion of possible ways to obtain money for the operation). Plaintiff was, in fact, able to obtain some foot surgery shortly after this hearing.

## II.

Redundantly, but to demonstrate that we have not forgotten, we repeat the standards that guide us.

An individual claiming disability benefits under the Social Security Act must prove both that he is disabled, that is, unable to engage in any substantial gainful activity, and that his disability has lasted or may be

---

1. 20 CFR § 404.1567(b) (1985).

2. 20 CFR § 404.1567(a) (1985).

expected to last at least twelve months.[3] The burden of proof rests initially on the claimant to establish that he is unable to perform his previous work.[4] If he succeeds, the burden of proof then shifts to the Secretary, who must persuade the factfinder that the claimant is capable of other gainful employment. The burden may then shift back to the claimant to prove that he is unable to perform the alternative work.[5] The Secretary's findings on all factual issues are final if they are supported by substantial evidence. To be substantial, evidence must be relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a speck or a scintilla but it need not be a preponderance. Judicial review is to be deferential without being so obsequious as to be meaningless. It is needless to cite the host of decisions that make this rubric.

Taylor's claim is based on the existence of different but overlapping disabilities that afflicted him for more than twelve months. The first began with his truck accident in January 1982; the second, with his apparently unrelated wrist problems, and his recuperation from wrist surgery in January of the following year. The third, caused by the ulcers on his feet and resulting complications, began in February 1983.

A medical condition that can reasonably be remedied is not disabling.[6] If, however, the claimant cannot afford the prescribed treatment and can find no way to obtain it, the condition that is disabling in fact continues to be disabling in law.[7]

There is no evidence in the record that Taylor could finance the surgery on his foot or could obtain financial assistance

earlier than he did. Indeed, the record points squarely to the contrary. In support of her findings, the district judge referred to the transcript of Taylor's testimony at the ALJ's hearing held on September 26, 1983, approximately nine months after Taylor began suffering from the disabling ulcers. Taylor there said what the record otherwise supports: The total cost of the foot surgery was estimated at $18,500; Taylor had no money to pay for the operation; the worker's compensation insurer denied liability, apparently with good reason, for one of Taylor's doctors said he saw "no way that his feet could be related to his industrial injury"; he was unable to get Social Security assistance because he had been found not to be disabled, and Texas had not yet adopted a "medically needy" program; Taylor turned to the only other source available, the Texas Rehabilitation Commission. When he sought help from the Commission, he was told that it was out of money for the present, but that he might return in October after the end of the fiscal year; and he did so promptly, for, on October 10, he underwent surgery.

▮ We must, therefore, reject the trial judge's finding, and conclude that, because he was unable sooner to obtain remedial treatment, Taylor's foot condition was an impairment that in fact caused his disability to last more than twelve months. Uncontroverted evidence of this was before the Appeals Council when it denied Taylor's appeal. Taylor had established that he was unable to return to his previous work for over twelve months, and no substantial evidence supported the Secretary in her burden of establishing that Taylor

3. 42 U.S.C. § 1382c(a)(3)(A) (1982); 20 CFR § 404.1505(a) (1985).

4. 20 CFR § 404.1512(a) (1985).

5. *Thomas v. Schweiker,* 666 F.2d 999, 1002 n. 3 (5th Cir.1982); *Fruge v. Harris,* 631 F.2d 1244, 1246 (5th Cir.1980); *Johnson v. Harris,* 612 F.2d 993, 997 (5th Cir.1980).

6. *Knox v. Finch,* 427 F.2d 919, 921 (5th Cir. 1970); *McCarty v. Richardson,* 459 F.2d 3, 4 (5th

Cir.1972); *Stillwell v. Cohen,* 411 F.2d 574, 575–76 (5th Cir.1969); *Whaley v. Gardner,* 255 F.Supp. 862, 867 (E.D.Mo.1966), aff'd, 374 F.2d 9, 11 (8th Cir.1967); 20 CFR § 404.1530(b) (1985).

7. *Tome v. Schweiker,* 724 F.2d 711, 713–14 (8th Cir.1984); *Hope v. Secretary of Health, Education and Welfare,* 347 F.Supp. 1048, 1055 (E.D.Tex.1972); *Hoover v. Celebrezze,* 235 F.Supp. 147, 150 (W.D.N.C.1964). *See Mellon v. Heckler,* 739 F.2d 1382, 1383 (8th Cir.1984).

was capable of alternative gainful employment during that time.

■ Neither do we find substantial evidence in the record to support the ALJ's conclusion that Taylor recovered sufficiently from his disabilities to be employable at any period of time after the truck accident on January 22, 1982. Although the immediate injuries healed, correspondence between Taylor's physician and his compensation insurer shows that Taylor was suffering from chronic cervical strain, under medication, and still disabled on March 30, 1982. Taylor reported a loss of grip and sensation in his hands to his doctor on April 14, and again on the 27th. This was diagnosed as carpal tunnel syndrome in May. Although the physician who operated on his wrists anticipated a full recovery by November of 1982, the doctor's progress reports and office notes show that on January 14, 1983, Taylor remained disabled. At that examination, he first complained about pain in his feet. They apparently became ulcerated the following month and, as described above, this disability has continued until Taylor was found disabled in a separate determination on July 26, 1984. According to Taylor's testimony, the foot ulcers developed partly because of a therapy exercise program that was a prerequisite for his return to physical labor. The only indications in the record that might suggest that Taylor had recovered or would recover within a twelve-month period are doctors' predictions of recovery which other evidence proved inaccurate.

Accordingly, the decision of the Secretary is REVERSED, and the Secretary is directed to award Taylor disability benefits for the period January 21, 1982 to July 7, 1984.