**Nancy CRONON, Plaintiff,**

v.

**Jo Anne B. BARNHART, Commissioner of Social Security, Defendant.**

**No. CIV.A.02–G–899–W.**

United States District Court, N.D. Alabama, Western Division.

Feb. 13, 2003.

---

Victoria A. Farr, Northport, AL, for Nancy Cronon, plaintiff.

Alice H. Martin, U.S. Attorney, Edward Q. Ragland, U.S. Attorney's Office, Birmingham, AL, Mary Ann Sloan, Social Security Administration–Office of General Counsel, Atlanta, GA, for Jo Anne B. Barnhart, Commissioner of Social Security Administration, defendant.

### MEMORANDUM OPINION

GUIN, District Judge.

Plaintiff brings this action pursuant to the provisions of section 205(g) of the Social Security Act, [hereinafter the Act], 42 U.S.C. § 405(g),[1] seeking judicial review of a final adverse decision of the Commissioner of Social Security [hereinafter Com-

---

**1.** 42 U.S.C. § 1383(c)(3) renders the judicial provisions of 42 U.S.C. § 405(g) fully applicable to claims for Supplemental Security Income [hereinafter SSI].

missioner]. Application for a period of disability and disability insurance benefits under sections 216(i) and 223 of the Social Security Act, as amended, was filed on December 31, 1998, as was an application for SSI as provided under Section 1601 of the Act, 42 U.S.C. §§ 1381 *et seq.* These applications were denied initially and upon reconsideration. Request for a hearing before an administrative law judge [hereinafter ALJ] [Jerry C. Shirley] was granted, and a hearing was held February 17, 2001. The ALJ's decision to deny benefits was handed down February 23, 2001. Plaintiff's request for review by the Appeals Council was denied February 13, 2002. An appeal to this court followed.

Plaintiff is a 51 year old female with an earned GED. As found by the ALJ she is unable to perform her past relevant work and has no transferable skills. The ALJ found that the medical evidence indicates that she has heart problems, carpal tunnel syndrome, hypertension, and back problems. He found her complaints of pain and the side effects of her medication unsupported by objective medical evidence.[2] In so doing he found that she is able to perform light work.

In reaching this opinion the court adopts the statement of facts in the decision of the ALJ, but not his conclusions, and the arguments presented in the plaintiff's brief.

The record shows Ms. Cronon suffers with, or has suffered with, the following physical impairments and treatment[3] therefore:

1) May 30, 1996, records from Kaweal Delta Health Care District: critical left main coronary stenosis and unstable angina—status post remote myocardial infarction—untreated hypertension—urgent coronary artery bypass graft × 2 with left internal thoracic artery to left anterior descending coronary artery and saphenous vein grafts to circumflex marginal arteries;

2) November 26, 1997, records from Kaweal Delta Health Care District: cardiac cauterization showed 70–80% stenosis of left main artery;

3) August 3, 1998, notes of Dr. Vinod Gupta, Diplomate American Board of Cardiovascular Diseases: assessment coronary artery disease, status post coronary artery bypass surgery, hypercholesterolemia, hyperthyroidism, and mild congestive heart failure;[4]

4) September 26, 2000, progress notes of Dr. John Mantle of Cardiology Consultants, P.C.: mild mitral valve regurgitation, mild aortic insufficiency, and tricuspid regurgitation—stable coronary artery disease—caution about "avoiding any strenuous work or heat conditions;"

5) May 21, 1997, notes of Dr. Peter C. Morrison of Orthopaedic Associates Medical Clinic, Inc: "considerable loss with a gas pattern at the L5–S1 disc" as shown by x-rays;—"severe degenerative changes;"

6) February 26, 1998, orthopaedic consultation notes of Dr. Cary Tanner of Visalia Medical Clinic, Inc: impression "significant lumbosacral degenerative disc disease;"

7) October 1, 1998, DX spine lumbosacral w/oblique at Kaweal Delta Department of Radiology: findings consistent with moderately advanced degenerative change at the L5–S1 level;

---

**2.** This finding was error.

**3.** Treatment dates are listed according to treatment for each impairment. They are, thus, not in chronological order.

**4.** The record documents that Dr. Gupta had seem plaintiff numerous other times for heart complaints.

8) January 20, 1999, chest x-rays indicate degenerative change;

9) May 27, 1998, treatment notes Dr. Lancy Allyn & Associates for bilateral wrist pain and numbness: minimal thenar atrophy on left side—Tinnel sign bilaterally—wrist pain bilaterally with no report of hypesthesia with Phalen's test—electro diagnostic studies showed slight right carpal tunnel syndrome and slight to moderate left carpal tunnel syndrome—arthralgia each wrist;

10) January 21, 1999, notes of Dr. Lancy Allyn: carpal tunnel release left side—moderate stenosis of carpal tunnel;

11) June 8, 1999, notes of Dr. Michael Wlasichuk of Physical Medicine & Rehabilitation Associates: nerve conduction tests evidence moderate to severe carpal tunnel syndrome on right, carpal tunnel syndrome of left with slowing of distal latency and nerve conduction velocity;

12) July 1, 1999, notes of Dr. Michael Wlasichuk of Physical Medicine &

Rehabilitation Associates: assessment post bilateral carpal tunnel release and bilateral lateral epicondylitis—opined disability status "permanent and stationary"—wrist pain on palpation—significantly reduced handgrip strength—elbow pain bilaterally on palpation—tenderness at lateral epicondyle (elbow)—loss of 50% pre-injury capacity for lifting, pushing, pulling, grasping, and torquing—opined plaintiff qualified injured worker—should have vocational retraining.

As of October 3, 2000, plaintiff's prescribed medication included, in part, the following:

Atenolol [5]

Vasotec [6]

Zocor [7]

Vicodin [8]

Celebrex [9]

Vioxx [10]

Zanaflex [11]

Lasix

Darvocet [12]

5. Prescribed for treatment of hypertension. *Physicians' Desk Reference,* (Medical Economics Company, Inc., Inc. 56rd ed 2002). [hereinafter PDR].

6. Prescribed for treatment of hypertension. It is indicated for treatment of symptomatic congestive heart failure. PDR.

7. This lipid-lowering agent is used in patients at increased risk for atherosclerosis-related clinical events as function of cholesterol level, presence of coronary disease, or other risk factors. PDR.

8. Vicodin (Hydrocodone) is a semisynthetic narcotic antitussive and analgesic with multiple actions qualitatively similar to those of codeine. It is indicated for the relief of moderate to moderately severe pain. It can cause lightheadedness, dizziness, sedation, nausea and vomiting. This is an addictive drug.

PDR. Plaintiff was prescribed 2–3 daily. Dr. Gupta prescribed it for pain.

9. Celebrex is used for relief of the signs and symptoms of osteoarthritis and rheumatoid arthritis in adults. PDR. Dr. Wlasichuk prescribed this for pain.

10. · Vioxx is a nonsteroidal anti-inflammatory drug It is indicated for the relief of signs and symptoms of osteorarthritis. PDR. Dr. Wlasichuk prescribed this for pain.

11. Zanaflex is indicated for management of spasticity. PDR. The record indicates Dr. Wlasichuk prescribed it for treatment of muscle spasms.

12. Darvocet is indicated for the relief of mild to moderate pain, either when pain is present alone or when it is accompanied by fever. The most commonly reported adverse reactions are dizziness, sedation, nausea, and vomiting. PDR.

Nitrostat [13]

Although plaintiff has had the above-listed medications prescribed she had been unable to have the recommended lumbar CT myelogram and MRI prior to the decision of the ALJ due to lacks of funds and no insurance. Her income is limited to $680.00 a month received in workers' compensation payments.

Plaintiff testified that she suffers from side effects of the prescribed medications. Nitroglygerine (Nitrostat) causes headaches. She has nausea and experiences frequent urination. She suffers with dizziness and is drowsy. She is reluctant to drive because some of the medications make her feel like she has lost touch with reality.

Pain is a constant problem. Nothing gets rid of it. It causes poor concentration. Due to the pain and side effects of medication her daily activities are limited. She can't sleep or eat. She sits around the house watching television and dozing. She does what she can around the house but does not worry about the housework getting done. Her social life has been curtailed.

In finding that claimant was not disabled the ALJ found there "is not objective clinical evidence of a condition which could reasonably be expected to produce the level of pain, or other symptoms which the claimant allege [sic] preclude her from working." He went to state the following:

> While the claimant has the above medical condition(s), there is no objective medical evidence confirming the severity of the alleged pain and symptoms arising from that condition(s) or that the objectively determined medical condition(s) are of such severity that they can reasonably be expected to give rise to

the alleged pain and other symptoms. Furthermore, no doctors have disabled claimant.

"The function of a reviewing court is limited to determining whether the Secretary's findings are supported by substantial evidence considering the evidence as a whole." *Mims v. Califano*, 581 F.2d 1211, 1213 (5th Cir.1978). "Substantial evidence is more than a scintilla, but less than a preponderance." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983). It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842, 852 (1971). The court is still responsible for scrutinizing " 'the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding.' " *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir.1983) (quoting *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir.1982)). The Eleventh Circuit has gone on to state the following:

> Our limited review does not, however, mean automatic affirmance, for although we defer to both the Secretary's fact-finding and her policy judgments, we must still make certain that she has exercised reasoned decision making. To this end, we evaluate the Secretary's findings in light of the entire record, not only that evidence which supports her position.

*Owens v. Heckler*, 748 F.2d 1511 (11th Cir.1984).

The court must further consider whether the decision of the Commissioner contains a material error of law. In *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir.1987), the court held:

> Despite this limited review, we scrutinize the record in its entirety to deter-

---

**13.** Nitrostat is indicated for the acute relief of an attack of acute prophylaxis of angina per-

toris due to coronary artery disease, PDR.

mine the reasonableness of the secretary's factual findings. *Bridges*, 815 F.2d at 624; *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir.1984). No similar presumption of validity attaches to the Secretary's legal conclusions, including determination of the proper standards to be applied in evaluating claims. *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir.1982).

Having evaluated the evidence, the court holds that the evidence does not support the decision denying disability benefits. Improper legal standards were applied. The ALJ has misread or misstated contents of the record.

 Whenever a claimant asserts disability through testimony of pain or other subjective symptoms, the Eleventh Circuit standard requires:

1) evidence of an underlying medical condition and either

2) objective medical evidence confirming the severity of the alleged pain arising from that condition or

3) that the objectively determined medical condition is of such severity that it can reasonably be expected to cause the alleged pain.

*Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir.1991). See also *Elam v. Railroad Retirement Board*, 921 F.2d 1210, 1215 (11th Cir.1991); *Lamb v. Bowen*, 847 F.2d 698, 702 (11th Cir.1988); *Hand v. Heckler*, 761 F.2d 1545, 1548 (11th Cir.1985).

 In *Brown v. Sullivan*, 921 F.2d 1233 (11th Cir.1991), the court said:

The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability. *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987); *MacGregor*, 786 F.2d at 1054; *Landry v. Heckler*, 782 F.2d 1551 (11th Cir.1986). If the Secretary decides not to credit such testimony, he must discredit it explicitly, *MacGregor* at 1054, and articulate explicit and adequate reasons for doing so. *Hale*, 831 F.2d at 1011. Failure to articulate the reasons for discrediting subjective pain testimony requires, as a matter of law, that the testimony be accepted as true. *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir.1988); *Hale*, at 1011; *MacGregor*, at 1054.

*Brown v. Sullivan*, 921 F.2d at 1236. As in *Brown*, Ms. Cronon's subjective testimony in the present case is well supported by objective medical evidence (x-rays showing severe degenerative changes, atrophy, nerve conduction tests, tenderness, pain on palpation, reduced handgrip strength, muscle spasms [14]) of underlying conditions (heart problems, carpal tunnel syndrome, hypertension, and back problems) [15] which could reasonably be expected to produce her pain. Although the ALJ states there is no objective evidence, the record as outlined belies the statement. [16] The ALJ's statement that "no doctors have disabled

---

14. Muscle spasm, for which Dr. Wlasichuk prescribed Zanaflex, is objective evidence of pain itself.

15. These medical conditions are included within findings of the ALJ.

16. The ALJ placed heavy emphasis on the fact that plaintiff had had no MRI or additional testing performed, but she testified that she has not had the funds for these expensive tests. In discussing this issue of lack of funds our circuit has had the following to say:

We agree with every circuit that has considered the issue that poverty excuses noncompliance. *See, e.g., Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir.1987) ("To a poor person, a medicine that he cannot afford to buy does not exist"); *Lovejoy v. Heckler*, 790 F.2d 1114, 1117 (4th Cir.1986) (failure to follow prescribed treatment does not preclude reaching the conclusion that a claimant is disabled when the failure is justified by lack of funds); *Dover v. Bowen*, 784 F.2d 335, 337 (8th Cir.1986) ("the ALJ must consider a claimant's allegation that he has not

claimant" ignores the opinion of Dr. Wlasichuk that her disability status relative to the failed carpal tunnel syndrome releases is "permanent and stationary." The medical evidence establishes that claimant's pain testimony is credible.[17] Objective evidence establishes conditions which could reasonably be expected to produce her pain. She has suffered and continues to suffer with pain. The ALJ's failure to articulate explicit and adequate reasons for rejecting this testimony requires that it be accepted as true. *Brown v. Sullivan,* 921 F.2d at 1236 (citing *Hale v. Bowen,* 831 F.2d at 1011).

There is abundant, uncontradicted clinical and objective evidence to establish the credibility of plaintiff's pain. No doctor has doubted her credibility. Rather multiple prescriptions for strong pain medicine have repeatedly been written. Accordingly, the opinion of the Commissioner is due to be REVERSED.

■ The ALJ's determination that plaintiff is capable of performing light

work [18] is additional error. Vocational expert Peacock testified that if plaintiff's testimony is credible regarding her pain and side effects of medication there is no work she can do. Record testimony follows:

Q. Okay. Why would that be? Can you be a little more specific?

A. Based on the testimony, the problem, should His Honor find it credible, related to her heart, the symptoms from her high blood pressure, the inability to use her hands as she has described as a result of the carpal tunnel, and the back pain that she has described, that would prevent any kind of work.

. . . . .

ALJ: I'm sorry. Would you say that again, Mr. Peacock?

VE: The difficulty she has described with her heart—

ALJ: What specifically?

VE: The inability to do anything over a period of time, as I understand it,

---

sought treatment or used medications because of lack of finances"); *Teter v. Heckler,* 775 F.2d 1104, 1107 (10th Cir.1985) (inability to afford surgery does not constitute an unjustified refusal and does not preclude *recovery of disability benefits*). Thus while a remedial or controllable medical condition is generally not disabling, when a "claimant cannot afford the prescribed treatment and can find no way to obtain it, the condition that is disabling in fact continues to be disabling in law." *Taylor v. Bowen,* 782 F.2d 1294, 1298 (5th Cir.1986) (footnote omitted).
*Dawkins v. Bowen,* 848 F.2d 1211, 1213 (11th Cir.1988).

17. Plaintiff takes four prescribed pain medications: Vicodin (addictive pain medication causing lightheadness, dizziness, sedation, nausea and vomiting), Celebrex, Vioxx, and Darvocet.

18. *Light work.* The regulations define light work as lifting no more than 20 pounds at a time with frequent lifting or carrying of ob-

jects weighing up to 10 pounds. Even though the weight lifted in a particular light job may be very little, a job is in this category when it requires a good deal of walking or standing—the primary difference between sedentary and most light jobs. A job is also in this category when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than in sedentary work. . . .

*"Frequent"* means occurring from one-third to two-thirds of the time. Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8–hour workday.
TITLES II AND XVI: DETERMINING CAPABILITY TO DO OTHER WORK—THE MEDICAL VOCATIONAL RULES OF APPENDIX 2, Sections 223(d)(2)(A) and 1614(a)(3)(B) of the Social Security Act and pertinent Regulations found in No. 4, Subpart P. and Appendix 2 and Regulations No. 16, Subpart I. SSR 83–10.

sustain any activity. The high blood pressure, the frequency, the problems of controlling it, up and down, as I have in my notes. The carpal tunnel where she said she could only occasionally at times lift up to seven pounds, I believe. And the inability to sit and move about as a result of her low back or back pain—I'm sorry, it's the upper back.

ALJ: I think she said upper back and low back.

ATTY: Yes, Your Honor.

ALJ: Would you agree?

Under questioning the vocational expert testified plaintiff would be unable to perform her past work. Any jobs available in the economy open to her would be limited to those involving occasional use of her hands. Clearly "light work" would require more from plaintiff than her doctor has adjudged her capable of performing; her hand disability resulting from the failed carpal tunnel syndrome releases is "permanent and stationary." [19]

The decision of the Commissioner is due to be REVERSED.

Additionally, new evidence which was submitted to the Appeals Council, but not included in the record,[20] further substantiates plaintiff's disabled status. Were the case remanded a finding of disability would be documented by the following evidence submitted to this court as attachments to plaintiff's brief:

1) Records from plaintiff's treating orthopedist Dr. H. Chester Boston based on MRI's, films, and examinations showing myoligamentous injury of lumbar spine;

2) June 6, 2001, letter from Dr. Boston opining that Ms. Boston is medically disabled as a result of degenerative disc disease complicated by her history of heart disease and emphysema;[21]

3) MRI report of lumbar spine dated April 30, 2001, showing disc desiccation and central disc protrusion at L5–S1 which contacts the proximal S1 nerve roots bilaterally;

4) Chest x-ray dated April 24, 2001, showing emphysematous aging chest with post-CABG changes;

**19.** Prior to her failed carpal tunnel surgery Dr. Allyn had limited her ability to lift as being up to 10 pounds utilizing either upper extremity. Surgery did not correct the problem. The limitation of 10 pounds does not meet the requirements for performance of "light work."

**20.** Plaintiff's record includes attachments of new evidence. The Commissioner's brief states that the Appeals Council did not consider the new evidence material. The court considers its statement that Dr. Boston's letter is immaterial as to the issue of whether plaintiff was disabled prior to February 23, 2001, to be absurd. While Dr. Boston's treatment notes indicate he served as a treating physician for three months, in discarding his opinion because of the length of time he served as her treating physician, the Commissioner ignores the fact that Dr. Boston is a specialist.

**21.** Specific language reads as follows: "In my judgment she will not be able to be gainfully employed on any consistent basis and therefore I recommend that she be retired." At the time he opined she was unable to work he had examined Ms. Cronon three times and conducted testing that no other doctor had performed. He qualifies as her treating physician. *See Lewis v. Callahan*, 125 F.3d 1436 (11th Cir.1997) (In determining whether claimant is entitled to social security disability benefits, testimony of treating physician must be given substantial or considerable weight unless good cause is shown to contrary); *Wiggins v. Schweiker*, 679 F.2d 1387 (11th Cir. 1982) (The law is clear that the ALJ must give substantial weight "to the opinion, diagnosis, and medical evidence of the claimant's treating physician."). *See also Walker v. Bowen*, 826 F.2d 996(11th Cir.1987); *Smith v. Schweiker*, 646 F.2d 1075 (5th Cir.1981).

5) MRI of thoracic spine dated April 24, 2001.

■ The above-listed new evidence did not exist at the time of the hearing.[22] It contains test results (MRI'S, films) considered important by the ALJ. The new evidence shows the extent of plaintiff's degenerative disease. Were this evidence considered there is a "reasonable certainty"[23] the evidence would change the result at the administrative level.

Dr. Boston's letter opining plaintiff's inability to work is based on degenerative disease complicated by coronary artery by-pass surgery[24] and pulmonary emphysema. His records clearly apply to the period prior to the date of the ALJ's decision and, standing alone on the basis of clear evidence, mandate REVERSAL of the Commissioner's decision. Dr. Boston's opinion that she is disabled supplies the ALJ's dubious requirement that a treating physician certify plaintiff disabled in so many words. The ALJ's opinion ignores the fact that plaintiff is drawing workers' compensation pay for permanent disability. Receipt of workers' compensation payments requires a physician's certification and is proof that somewhere there exists just such a certification.

The new evidence clearly relates to the time before the ALJ's decision. Although it is new evidence it documents conditions that existed for some time and shows that her impairments are even more severe than previously shown by the medical records.

For the reasons set forth above the decision of the Commissioner is REVERSED.

An order consistent with this opinion is being entered contemporaneously herewith.

### *ORDER*

In conformity with and pursuant to the memorandum opinion entered contemporaneously, it is

ORDERED, ADJUDGED and DE-CREED that the decision of the Commissioner of Social Security be and it hereby is REVERSED, and the case is RE-MANDED to the Commissioner with instructions that the plaintiff be granted the benefits claimed. It is

FURTHER ORDERED, ADJUDGED and DECREED that the motion to remand is DENIED, the court having reversed the decision of the Commissioner.

It is FURTHER ORDERED that pursuant to the reversal the Commissioner withhold from payments which he may determine are due plaintiff under this order an amount not to exceed 25 percent of the total amount of disability benefits to which the plaintiff is entitled, pursuant to the provisions of section 206 of the Social Security Act, as amended 42 U.S.C. § 406(b). The Commissioner is directed to advise the court of the amount withheld so that the matter may be set for final determination of the amount of attorney's fees to be allowed plaintiff's counsel for services rendered in representing the plaintiff in this cause.

---

**22.** The new evidence satisfies the requirements of *Milano v. Bowen,* 809 F.2d 763, 766–767 (11th Cir.1987): new, noncumulative evidence which is material and for which there is good cause for failure to submit at the administrative level.

**23.** *See Smith v. Bowen,* 792 F.2d 1547, 1550–51 (11th Cir.1986).

**24.** The degenerative disease and heart condition are well documented in the record previously outlined.